Andrew R. Missel (OSB # 181793)
Elizabeth H. Potter (OSB # 105482)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave., Ste. B
Portland, OR 97202
(503) 914-6388
amissel@advocateswest.org
epotter@advocateswest.org

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA RIVERKEEPER** and **1000 FRIENDS OF OREGON**, | Case No.:    3:24-cv-00868 |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| **COL. LARRY "DALE" CASWELL, JR.,** **in his official capacity as Commander and District Engineer of the U.S. Army Corps of Engineers' Portland District;** and the **U.S. ARMY CORPS OF ENGINEERS**, | |
| Defendants. | |

COMPLAINT                    1

**INTRODUCTION**

1.      NXTClean Fuels ("NEXT") seeks to build a so-called "renewable diesel" fuel refinery at Port Westward near Clatskanie, Oregon. The NEXT Refinery, if built, would have serious adverse environmental effects on the surrounding area and the Columbia River. Constructing the project would require destroying almost 120 acres of wetlands—an area nearly 80 times larger than the median wetland loss authorized in Oregon in recent years. The project would lead to greater barge traffic in the Columbia River Estuary, harming endangered and threatened salmon and steelhead species. The NEXT Refinery would pollute the air and water around Port Westward. And, perhaps most alarmingly, the project would entail storing over 1,000,000 barrels of diesel and jet fuel adjacent to the Columbia River, creating the conditions for a catastrophic spill.

2.      During the construction of its refinery, NEXT plans to bring in heavy equipment and building materials by barge to a dock at Port Westward, then transport those materials to the facility site using trucks. The trucks will travel from the dock to the construction site by driving on a road that sits atop a levee which is part of the Beaver Drainage District, a federally authorized flood damage reduction system.

3.      Community members and the Beaver Drainage Improvement Company— the municipal entity that maintains the levee—have repeatedly voiced concerns about NEXT's plan to drive heavy equipment on top of the levee. The Beaver Drainage Improvement Company has stated that "[p]revious industrial projects and related traffic have significantly lowered the height of the levee structure in multiple locations

which poses a grave threat from flood waters overtopping the levee structure," and that construction of the NEXT Refinery threatens to exacerbate these problems.

4.      Even NEXT appears to understand the potential danger that its plan poses to the levee. According to a report prepared for NEXT in 2021, "[i]mprovements to [the road on top of the levee] will ... be required to allow transport of equipment and materials from the small barge docks on the Columbia River to the facility site." And NEXT has acknowledged the need to perform a "geotechnical study of [the road] ... prior to construction to determine the weight capacity of the road."

5.      Because NEXT plans to make use of the Beaver Drainage District levee when constructing its project, and because driving heavy loads over the levee could damage the levee, NEXT is required to obtain permission for its project from Defendant U.S. Army Corps of Engineers ("Corps") under § 14 of the Rivers and Harbors Appropriations Act of 1899, 33 U.S.C. § 408, commonly known as "section 408." In relevant part, § 408 makes it unlawful "for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, [or] obstruct ... any ... dike [or] levee ... built by the United States" without permission from the Corps.

6.      Despite the fact that the NEXT Refinery project will plainly "make use of" the levee and could "alter" or even "injure" the levee, the Corps has determined that the project does not need to undergo § 408 review. On April 7, 2022, the Corps sent a letter to NEXT informing NEXT of the Corps' "determination" that the NEXT Refinery "will

not alter, occupy, or use a ... federally authorized [flood control] project and therefore does not require permission from the [Corps] under" § 408.

7.    The Corps' determination is legally erroneous. As the April 7, 2022 letter states, the NEXT Refinery project will "utilize the [Beaver Drainage District] levee as a haul road." This "utilization" of the levee constitutes "mak[ing] use of" the levee within the meaning of § 408 and thus requires permission from the Corps.

8.    In addition, The Corps' determination letter fails to grapple with the threat that driving trucks loaded with heavy construction equipment and refinery components over the levee will "alter" or even "injure" the levee within the meaning of § 408. This could lead to increased flooding, which would likely contaminate water sources behind the levee that are used for farming and domestic use. The § 408 review process is designed to evaluate and address precisely this type of threat, and yet the Corps allowed NEXT to bypass the § 408 process entirely.

9.    The NEXT Refinery must go through a full § 408 review to ensure that the project will not damage the Beaver Drainage District flood control system, and to ensure that the project is not "injurious to the public interest." 33 U.S.C. § 408(a).

10.    Plaintiffs Columbia Riverkeeper and 1000 Friends of Oregon bring suit against the Corps under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, to challenge the legality of the Corps' April 7, 2022 determination letter. Plaintiffs ask the Court to set aside the Corps' determination letter as arbitrary and capricious and not in accordance with law and award such other equitable relief as may be appropriate.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the APA, 5 U.S.C. § 701 *et seq.*; and § 14 of the Rivers and Harbors Appropriations Act of 1899 ("Rivers and Harbors Act of 1899"), 33 U.S.C. § 408.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because "a substantial part of the events or omissions giving rise to the claim occurred" in the District of Oregon. Venue is proper in the Portland Division because "a substantial part of the events or omissions giving rise to the claim occurred" in Multnomah County, where the Corps' Portland District is located, and in Columbia County, both of which are in the Portland Division. LR 3-2(b).

13.     The federal government waived sovereign immunity in this action pursuant to the APA, 5 U.S.C. § 701 *et seq.*

14.     Plaintiffs have exhausted all available administrative remedies.

## PARTIES

15.     Plaintiff Columbia Riverkeeper is a 501(c)(3) non-profit corporation with offices in Portland and Hood River, Oregon. The mission of Columbia Riverkeeper is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Columbia Riverkeeper conducts scientific, educational, and legal programs aimed at protecting water quality, air quality, and habitat in the Columbia River Basin. For more than a decade, Columbia Riverkeeper has worked with its members and with the

COMPLAINT                                    5

general public to protect the farmland and natural resources in the Port Westward area, which is protected by or borders the Beaver Drainage District levee.

16.     Columbia Riverkeeper has over 16,000 members, many of whom use the waters and lands near the proposed NEXT Refinery for fishing, farming, hiking, walking, photography, boating, spiritual and religious purposes, and observing wildlife. These members' aesthetic, economic, recreational, scientific, and spiritual interests in these areas will be adversely impacted if the NEXT Refinery is built, because the project will increase air pollution, lead to more barge and rail traffic and associated noise and other disturbances, destroy over 100 acres of wetlands, raise the risk of a catastrophic diesel fuel spill, lead to a higher risk of flooding and water pollution, and cause other environmental harms, as discussed in more detail below.

17.     Plaintiff 1000 Friends of Oregon is a 501(c)(3) non-profit corporation with its main office in Portland. Its mission is to enhance Oregonians' quality of life by building livable urban and rural communities, protecting family farms and forests, and conserving natural areas. 1000 Friends engages in community collaboration, education, and outreach in all 36 Oregon counties. 1000 Friends has been working for many years to protect farmland and natural areas in and around Port Westward from increased industrial development.

18.     1000 Friends of Oregon has over 1,800 members, many of whom use and enjoy the waters and lands near the proposed NEXT Refinery for fishing, farming, hiking, walking, photography, and observing wildlife. These members' aesthetic, economic, recreational, scientific, and spiritual interests in these areas will likely be

adversely impacted if the NEXT Refinery is built, because the project will increase air pollution, lead to more barge and rail traffic and associated noise and other disturbances, destroy over 100 acres of wetlands, raise the risk of a catastrophic diesel fuel spill, lead to a higher risk of flooding and water pollution, and cause other environmental harms, as detailed below.

19.     For members of Columbia Riverkeeper or 1000 Friends of Oregon who reside near the NEXT Refinery, the likely adverse effects of the project are even worse. There is a reasonable risk that the project will damage the Beaver Drainage District levee, leading to increased flooding. This would have catastrophic effects for members who live in the 5,600-acre area protected by the levee. And, even without flooding, the water pollution caused by the NEXT Refinery will threaten to contaminate water supplies used for farming and domestic uses: the area behind the levee has been described as a "bathtub," and pollution from the NEXT facility will likely make its way to nearby properties, including properties owned and/or occupied by members of Columbia Riverkeeper and/or 1000 Friends.

20.     Defendant Colonel Larry "Dale" Caswell, Jr. is sued in his official capacity as the Commander and District Engineer of the Portland District of the U.S. Army Corps of Engineers. As District Commander, Colonel Caswell has the authority to decide whether the NEXT Refinery requires permission under § 408.

21.     Defendant U.S. Army Corps of Engineers is an agency or instrumentality of the United States, under the U.S. Department of the Army and the Department of Defense. Under 33 U.S.C. § 408, the Corps is responsible for granting permission to use,

occupy, or alter flood control works built by the United States. The Corps maintains an office in Portland, Oregon that serves as the headquarters of the Northwest Division, which includes the Portland District.

**LEGAL BACKGROUND**

**Section 408**

22.     Section 14 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 408, makes it unlawful "for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States ... for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks." 33 U.S.C. § 408(a).

23.     Section 408 "lists three groups of prohibited actions, each separated by the conjunction 'or': 'take possession of or make use of for any purpose, *or* build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, *or* in any manner whatever impair the usefulness ...' The first group involves use and possession; the second involves physical damage; the third involves impairment of the usefulness of the structure." *United States v. Federal Barge Lines, Inc.*, 573 F.2d 993, 997 (8th Cir. 1978) (emphasis in original).

24.     The Corps may "grant permission for the temporary occupation or use of any of the aforementioned public works when in [its] judgment such occupation or use

will not be injurious to the public interest." 33 U.S.C. § 408(a). The Corps may also

"grant permission for the alteration or permanent occupation or use of any of the

aforementioned public works when in [its] judgment ... such occupation or use will not

be injurious to the public interest and will not impair the usefulness of such work." *Id.*

25.    It is a misdemeanor to use or alter a covered work, as described in § 408,

without permission from the Corps. 33 U.S.C. § 411.

**The Corps' Section 408 Process**

26.    The Corps' process for granting permission to "use" or "alter" a covered

structure under § 408 is set out in Engineer Circular 1165-2-220 ("EC 1165-2-220"). The

§ 408 process is intended to ensure that a proposed activity "will not be injurious to the

public interest and will not impair the usefulness of" a covered work.

27.    In determining whether an activity will "impair the usefulness of" a

covered structure, the Corps asks whether the activity "will ... limit the ability of the

[structure] to function as authorized" or "will ... compromise or change any authorized

... conditions, purposes or outputs" of the structure. "All appropriate technical analyses

including geotechnical, structural, hydraulic and hydrologic, real estate, construction,

and operations and maintenance requirements, must be conducted, and the technical

adequacy of the design must be reviewed. ... If at any time it is concluded that the

usefulness of the authorized [structure] will be negatively impacted, any further

evaluation should be terminated and the requester notified."

28.    Under EC 1165-220, the Corps generally requires "a written 'Statement of

No Objection' from the non-federal sponsor" of a covered flood control project before it

will grant a § 408 permit. The "non-federal sponsor" is the non-federal entity that owns and/or operates and maintains a project. "The purpose of the Statement of No Objection is to document that the non-federal sponsor is aware of the scope of the Section 408 request and does not object to the request being submitted to [the Corps] to initiate the evaluation of the request."

29.    EC 1165-2-220 also requires the Corps to "coordinate with non-federal sponsors throughout the [§ 408] review process and ensure feedback from non-federal sponsors is considered prior to [the agency] rendering a final decision on the Section 408 request." The final decision regarding whether to grant § 408 permission must "demonstrat[e] that the [Corps] provided opportunity for the non-federal sponsor to review and evaluate the proposed alteration along with the technical analysis and design, environmental effects, real estate requirements, and potential O&M effects and that the [Corps] sought to incorporate the non-federal sponsor[']s feedback and concerns into the decision-making process."

30.    EC 1165-2-220 also provides opportunities for the public to participate in § 408 decisions. The Corps "must make diligent efforts to solicit public input as part of the decision-making process for a Section 408 request." Unless the request is covered by a categorical permission, the Corps issues a public notice regarding the request "as early in the evaluation of a proposed alteration as possible to generate meaningful public and agency input to inform the evaluation and decision-making processes."

## STATEMENT OF FACTS

**The NEXT Refinery**

31.     The NEXT Refinery is a proposed "renewable diesel" facility to be built at Port Westward, a low-lying area along the Columbia River near Clatskanie, Oregon. According to the refinery's proponent, the NEXT Refinery would be able to produce up to 50,000 barrels per day of "renewable diesel" and "sustainable aviation fuel."[1]

32.     The plan for the NEXT Refinery is to make fuel by refining various "feedstocks" such as soybean oil, used cooking oil, and animal tallow. The facility would bring in these feedstocks both by rail and by barge. Most of the fuel would then be sent out from the facility via pipeline to be transported by barge down the Columbia River, with the remainder transported to market by truck or rail.

33.     The NEXT Refinery would be built entirely within the boundaries of the Beaver Drainage District, a federally authorized flood damage reduction system that includes levees and a pumping station. The system is operated and maintained by the Beaver Drainage Improvement Company ("BDIC"), a nonprofit municipal corporation organized under Chapter 554 of the Oregon Revised Statutes.

34.     Building the NEXT Refinery would require constructing the following: a pre-treatment plant, office and administration buildings, a laboratory, 10 large and 11 small tanks to hold product and feedstock, an access road, a rail spur and rail spur

---

[1] At the time of the Corps' letter in April 2022, the company behind the NEXT Refinery was known as NEXT Renewables. As of the filing of this complaint, it is known as NXTClean Fuels. In this complaint, the company is simply referred to as "NEXT."

access road, four new pipelines, and other miscellaneous infrastructure. This would require the permanent destruction of over 117 acres of wetlands.

35.    NEXT plans to transport construction and other equipment to the facility site using heavy haul trucks. The equipment will first arrive at Port Westward by barge, where it will be unloaded onto trucks; it will then be driven to the facility site or a nearby staging area.

36.    The heavy haul trucks will travel from the barge unloading area to the facility site/staging area via Kallunki Road. The portion of Kallunki Road over which the trucks will travel is situated on top of part of the Beaver Drainage District levee.

37.    The map below shows the barge unloading area, haul road, and facility site/staging area.



38.     According to a wetland delineation report prepared for NEXT in 2021, "[i]mprovements to Kallunki Road will ... be *required* to allow transport of equipment and materials from the small barge docks on the Columbia River to the facility site." (Emphasis added.)

39.     NEXT has told the Corps that it will perform a "geotechnical study of [Kallunki] [R]oad ... prior to construction to determine the weight capacity of the road."

**The Environmental Harms Flowing from the NEXT Refinery**

40.     The construction and subsequent operation of the NEXT Refinery would cause tremendous environmental harm to the area around Port Westward. It would also dramatically increase the risk of a catastrophic oil spill in the Columbia Estuary, which is an area essential to several species of salmon and steelhead trout that are listed as threatened or endangered under the Endangered Species Act ("ESA"). Moreover, the fuel produced by the facility would not be nearly as "renewable" or "sustainable" as NEXT claims it will be.

41.     Constructing the NEXT facility would require the permanent destruction of over 117 acres of wetlands. This is nearly 80 times the impact of the median development project in Oregon in recent years and three times greater than the largest wetland loss authorized in Oregon since 2011. These wetlands are hydrologically connected to the Columbia River Estuary, which is designated critical habitat for 13 different populations of salmon and steelhead listed as threatened or endangered under the ESA.

42.     The NEXT Refinery would produce a great deal of air pollution in the area around Port Westward, including nearly 70 tons a year of volatile organic compounds and over 25 tons a year of particulate matter. The project would also emit over 1,000,000 tons per year of greenhouse gases.

43.     The NEXT Refinery would lead to an increase in rail traffic, with up to three additional trains of roughly 100 rail cars apiece traveling to and from the facility each week. These trains would primarily be used to bring feedstock to the site, but could also be used to transport finished product to market. A train derailment or other accident—especially one involving a train carrying diesel fuel—would likely have severe consequences for both nearby agricultural land and the Columbia Estuary.

44.     The NEXT Refinery would lead to more barge and ship traffic through the Columbia Estuary, a highly sensitive area essential to the survival and recovery of many ESA-listed salmon and steelhead and other species. Increased ship traffic will interfere with Plaintiffs' recreational fishing pursuits on the Columbia River. More importantly, larger ships of the type that will be used by NEXT will cause salmonid mortality through "wake-stranding." Wake-stranding occurs when a ship causes a rise in near-shore water levels in its wake, leading to juvenile salmonids being deposited on the shore. The National Marine Fisheries Service, the expert federal agency in charge of administering the ESA for Columbia Basin salmon and steelhead, has called wake-stranding "a significant regulatory concern in the lower Columbia River that needs to be addressed."

45.     More barges and ships would also mean more opportunities for accidents at Port Westward, like the November 2023 incident in which a tugboat rammed into a dock at the Port, nearly causing thousands of gallons of oil to spill into the Columbia River. A large oil spill in an area as sensitive as the Columbia River Estuary would have devastating environmental effects.

46.     The NEXT Refinery would entail storing over 1,000,000 barrels of diesel fuel and feedstock near the Columbia River, setting the conditions for a catastrophic spill due to an earthquake or other event. Such a spill would likely contaminate not only the river, but also large portions of the land within the Beaver Drainage District levee.

47.     As BDIC has consistently pointed out, the NEXT Refinery could also compromise the integrity of the Beaver Drainage District levee, increasing the risk of flooding behind the levee. According to BDIC, "[l]evee traffic ... [is] of grave concern due to compaction and resulting height deficiencies to protect from flooding. ... Previous industrial projects and related traffic have significantly lowered the height of the levee structure in multiple locations which poses a grave threat from flood waters overtopping the levee structure and damaging the levee and agricultural operations within the Drainage Company system." Floodwater would pick up pollutants from NEXT's facility and other nearby industrial facilities, leading to contamination of water used for farming and domestic purposes.

48.     Even without flooding, NEXT's facility will increase the risk of water pollution behind the levee. The area behind the levee has been described as a "bathtub,"

COMPLAINT                                    15

and pollution from the NEXT refinery—including pollution carried by stormwater runoff—risks contaminating surface water used for farming and domestic purposes, including water used by Plaintiffs' members.

49.     Finally, NEXT's fuel would not be nearly as "renewable" or "sustainable" as NEXT claims. It is unlikely that NEXT will be able to secure sufficient quantities of used cooking oil, animal tallow, etc. to use as feedstock, so it will instead have to rely on soybean oil and other vegetable oils produced specifically for use as "renewable" diesel feedstocks. Because of land-use impacts and other factors, this would greatly increase the carbon footprint of NEXT's fuel over the company's projections.

**NEXT's Clean Water Act Application**

50.     Because building the NEXT Refinery would involve filling wetlands that constitute "waters of the United States," NEXT must obtain a permit from the Corps under § 404 of the Clean Water Act, 33 U.S.C. § 1344. NEXT submitted an application for such a permit to the Corps in 2021.

51.     In the application, NEXT described its plan to use the road atop the Beaver Drainage District levee to haul heavy equipment from the barge unloading area to the facility construction site/staging area. The application mentioned 33 U.S.C. § 408 and stated that NEXT would "use" the levee/dike, but claimed that the project would "have no effect on the dike or the purpose of the dike."[2]

---

[2] "Levee" and "dike" technically refer to two different things: a levee protects land that would normally be dry from flooding, whereas a dike protects land that would be underwater but for the dike. In this complaint, however, the two terms are used interchangeably.

52.     The application also discussed the creation of a mitigation wetland to compensate for the wetlands lost due to the construction of the NEXT refinery. The mitigation wetland is proposed to be constructed near part of the Beaver Drainage District levee.

**The Corps' § 408 Determination Process and Determination Letter**

53.     In February 2022, an employee in the Regulatory Branch at the Corps' Portland District emailed personnel responsible for the § 408 permitting program to inform them that the Next Refinery was ready for § 408 review. The email stated that "[t]he Beaver Drainage Improvement Company is the local sponsor for the levee." The email noted a possible § 408 issue with the mitigation wetland, but did not mention the use of the Beaver Drainage District levee as a haul road.

54.     On April 7, 2022, the Corps sent NEXT a one-page letter announcing the Corps' "determination" that "the proposed project will not alter, occupy, or use a [covered] project and therefore does not require permission from the [Corps] under Section 408." The letter states that the Corps "retains the right to revoke this Section 408 determination at any time if the proposed work negatively affects the federally authorized project or if the project plans change." The letter is included as Exhibit 1 to this Complaint.

55.     In describing the NEXT Refinery and its potential effects on the Beaver Drainage District levee, the letter states that "[t]he proposal is to *utilize the levee* as a haul road. The proposed new construction or *use as a haul road* will not alter the levee system." (Emphasis added.)

COMPLAINT                                    17

**Subsequent Events**

56.     Following the issuance of the § 408 determination letter, the Corps
published in the Federal Register a notice of intent to prepare an environmental impact
statement in connection with NEXT's § 404 application. 87 Fed. Reg. 27,991 (May 10,
2022). According to an internal memorandum, the Corps deliberately excluded from the
Federal Register notice "any 408-review language" because it had already made its
§ 408 "determination."

57.     In May 2022, the President of BDIC emailed the Corps to ask about the
Corps' regulatory process for the NEXT Refinery. The email referenced § 408 several
times and requested "a complete 408 review." A representative from the Corps emailed
back and stated that "[t]he Corps Section 408 team has reviewed the NEXT proposal in
regards to the levees and determine [sic] the project as-proposed will not affect the
levee and require permission from the Corps under Section 408."

58.     In the time since the Corps' § 408 determination, plans for the NEXT
Refinery have changed slightly, but they still include using part of the Beaver Drainage
District levee as a haul road. NEXT's most recent (and, on information and belief,
currently operative) application for a Clean Water Act § 404 permit states that "the
[Beaver Drainage District] dike is currently used as the access road for the Port
Westward Industrial site" and will be "use[d]" as a haul road during construction of the
NEXT Refinery.

59.     The Corps has not revoked its § 408 determination. NEXT's currently operative § 404 application states that NEXT does not need permission from the Corps under 33 U.S.C. § 408, citing the Corps' April 7, 2022 determination letter.

**The Importance of § 408 Review of NEXT's Proposal**

60.     A full § 408 review of the NEXT Refinery is needed to ensure that the project will not be "injurious to the public interest" and that it will not "impair the usefulness of" the Beaver Drainage District levee. Building the refinery without first conducting a § 408 review risks damaging the levee, which would increase the risk of flooding in the area, as described above.

61.     In addition, a full § 408 review would ensure that BDIC and the public have a larger say in how and whether the NEXT Refinery moves forward. BDIC has repeatedly raised concerns about the effects of the NEXT Refinery on the levee and has called for a full § 408 review of the project. BDIC would be able to participate meaningfully in that review and make sure that construction of the NEXT Refinery would not negatively impact the levee system it is in charge of maintaining.

<u>CLAIM FOR RELIEF</u>

**Violation of 33 U.S.C. § 408 and the APA**

62.     Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 61, inclusive.

63.     This claim is brought under the APA's cause of action for review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Corps' April 7, 2022 letter represents "final agency action."

COMPLAINT                              19

64.     Section 408 makes it unlawful "for any person or persons to take possession of or make use of for any purpose" a covered work without permission from the Corps. Section 408 also makes it unlawful "for any person or persons to ... build upon, alter, deface, destroy, move, [or] injure" a covered work without permission from the Corps. The Corps may not grant permission for a proposed activity that would "be injurious to the public interest" or that would "impair the usefulness of" a work.

65.     The Beaver Drainage District levee is a work covered by § 408.

66.     As the Corps' April 7, 2022 determination letter states, the NEXT Refinery project would "utilize the [Beaver Drainage District] levee as a haul road." This amounts to "mak[ing] use of" the levee "for any purpose," triggering the need for permission from the Corps. Inexplicably, the Corps has nonetheless determined that the NEXT Refinery does not require § 408 permission.

67.     In addition, the Corps' letter does not explain why NEXT's plan to drive heavy loads over the levee will not "alter" or even "injure" the levee, despite the fact that the levee has been damaged by past use as a road and despite the fact that even NEXT acknowledges that the road on top of the levee needs improvement.

68.     To the extent that the NEXT Refinery requires making improvements to Kallunki Road, the project would involve "build[ing] upon" the Beaver Drainage District levee, triggering § 408. The Corps' letter does not address this at all.

69.     Therefore, the Corps' April 7, 2022 letter is "not in accordance with law," 5 U.S.C. § 706(2)(A), because it erroneously concludes that the NEXT Refinery need not go through § 408 review. The letter is also "arbitrary and capricious," *id.*, because it fails

to provide a reasoned explanation for the Corps' § 408 determination in light of the record before the agency.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

A.      Adjudge and declare that the Corps' determination letter of April 7, 2022 is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

B.      Set aside and vacate the April 7, 2022 determination letter and the agency decision it reflects;

C.      Enter such other declaratory relief and temporary, preliminary, or permanent injunctive relief as may be prayed for hereafter by Plaintiffs;

D.      Award Plaintiffs their reasonable costs, litigation expenses, and attorneys' fees associated with this litigation pursuant to the Equal Access to Justice Act and other provisions of law allowing for the recovery of such expenses; and

E.      Grant such further relief as the Court deems just and proper in order to provide Plaintiffs with relief and protect the public interest.


Dated:        May 30, 2024                Respectfully submitted,

                                          */s/ Andrew R. Missel*
                                          Andrew R. Missel (OSB # 181793)
                                          Elizabeth H. Potter (OSB # 105482)
                                          ADVOCATES FOR THE WEST
                                          3701 SE Milwaukie Ave., Ste. B
                                          Portland, OR 97202
                                          (503) 914-6388
                                          amissel@advocateswest.org
                                          epotter@advocateswest.org

                                          *Attorneys for Plaintiffs*

COMPLAINT                    21