**ESOSA AIMUFUA, (DC Bar 1672003)**
Esosa.Aimufua@usdoj.gov
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611,
Washington, DC 20044-7611
Tel: (202)-532-3818

*Attorney for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA RIVERKEEPER** and **1000 FRIENDS OF OREGON**, | **Case No.: 3:24-cv-00868** |
| Plaintiffs, | |
| v. | **DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND MEMORANDUM IN SUPPORT** |
| **COL. LARRY "DALE" CASWELL, JR., in his official capacity as Commander and District Engineer of the U.S. Army Corps of Engineers' Portland District,** and the **U.S. ARMY CORPS OF ENGINEERS**, | |
| Defendants. | |

Defs.' Motion to Dismiss and Memorandum

## DEFENDANTS' MOTION TO DISMISS

Defendants, Colonel Larry "Dale" Caswell, Jr., in his official capacity as Commander and District Engineer of the U.S Army Corps of Engineers Portland District, and the U.S. Army Corps of Engineers (collectively "the Corps") hereby moves this Court, under Federal Rule of Civil Procedure 12(b)(1), to dismiss this action for lack of jurisdiction.

In accordance with Local Rule 7-1(a), undersigned counsel certifies that the Parties made a good faith effort through telephone conferences to resolve the dispute and have been unable to do so. A Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' claim follows.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

      A.    Legal Background ................................................................................... 2

            1.    Rivers and Harbors Act .............................................................. 2

      B.    Factual Background ................................................................................ 3

      C.    Procedural Background .......................................................................... 5

III.  STANDARD OF REVIEW ................................................................................ 6

IV.   ARGUMENT ..................................................................................................... 7

      A.    Plaintiffs have not established standing ................................................ 7

            1.    Plaintiffs fail to adequately allege injury-in-fact for their claim ........... 8

            2.    Plaintiffs do not adequately allege causation ........................... 11

            3.    Plaintiffs' claims are not redressable ....................................... 13

      B.    Plaintiffs have failed to otherwise plead a valid APA claim .............. 15

            i.    The Corps' Letter does not constitute the consummation of the
                  Corps' decision-making process ................................................ 15

            ii.   The Corps' Letter does not determine any rights or obligations,
                  nor does it have legal consequences ......................................... 16

      C.    Plaintiffs' claim should be dismissed because it is not prudentially ripe. ...... 18

V.    CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wright,*
  468 U.S. 737 (1984) ..............................................................................13, 14

*Baker v. Carr,*
  369 U.S. 186 (1962) ...................................................................................... 6

*Bennett v. Spear,*
  520 U.S. 154 (1997) .................................................................................... 15

*Bishop Paiute Tribe v. Inyo Cty.,*
  863 F.3d 1144 (9th Cir. 2017) .................................................................... 18

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
  598 F.3d 1115 (9th Cir. 2010) ...................................................................... 6

*Clapper v. Amnesty Int'l, USA,*
  568 U.S. 398 (2013) .................................................................................... 10

*Ctr. for Biological Diversity v. Mattis,*
  868 F.3d 803 (9th Cir. 2017) ...................................................................... 15

*Fairbanks N. Star Borough v. U.S. Army Corps of Engineers,*
  543 F.3d 586 (9th Cir. 2008) ...................................................................... 17

*Food & Drug Admin. v. All. for Hippocratic Med.,*
  602 U.S. 367 (2024) ..................................................................7, 8, 10, 11, 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
  528 U.S. 167 (2000) .................................................................................... 13

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ...................................................................................... 7

*Hunt v. Wash. State Apple Advert. Comm'n,*
  432 U.S. 333 (1977) ...................................................................................... 8

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ...................................................................................... 6

*Lewis v. Casey,*
  518 U.S. 343 (1996) ...................................................................................... 8

*Linda R.S. v. Richard D.,*
  410 U.S. 614 (1973) .................................................................................... 13

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...............................................................................7, 8, 11

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .................................................................13, 15

*Nw. Ctr. for Alternatives to Pesticides v. U.S. Dep't of Homeland Sec.*,
   552 F. Supp. 3d 1078 (D. Or. 2021) .....................................................15, 17

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
   523 U.S. 726 (1998) ............................................................................ 18

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) ............................................................... 17

*Pride v. Correa*,
   719 F.3d 1130 (9th Cir. 2013) ................................................................ 6

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................ 6

*San Francisco Herring Ass'n v. Dep't of the Interior*,
   946 F.3d 564 (9th Cir. 2019) ............................................................... 16

*Sierra Club v. Morton*,
   405 U.S. 727 (1972) ............................................................................. 7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .............................................................................. 6

*Summers v. Earth Island Inst.*,
   555 U.S. 488, (2009) ............................................................................ 7

*Thomas v. Anchorage Equal Rights Com'n*,
   220 F.3d 1134 (9th Cir. 2000) .............................................................. 18

*United Food & Commercial Workers Union Local. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) ............................................................................. 8

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ............................................................... 6

**Statutes**

33 U.S.C. § 408 .................................................................................2, 14

33 U.S.C. § 408(a) .............................................................................2, 3

5 U.S.C. § 704 .................................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(1).......................................................................... i, 6

Fed. R. Civ. P. 12(h)(3) ......................................................................... 6

**Regulations**

33 C.F.R. § 325.2(a)(4) ........................................................................ 3, 4, 5, 19

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## I.     INTRODUCTION

Two years ago, the Corps sent a letter to NEXT Renewable Fuels Oregon, LLC ("NEXT")—the applicant and developer of a planned renewable energy terminal located near Clatskanie, Oregon—informing NEXT that it does not need permission under Section 408 of the Rivers and Harbors Act to use an existing road located on top of a federally constructed civil works project, the Bradbury Slough levee. The Corps reasoned that, because NEXT would drive its equipment on the existing road and not on the levee itself, and because it will not use the road beyond existing uses, NEXT does not need permission from the Corps under Section 408. Plaintiffs now challenge this letter as a final agency action under the Administrative Procedure Act ("APA") and allege that the Corps' conclusion is contrary to Section 408 of the River and Harbors Act. They seek declaratory relief and vacatur of the Corps' Letter. However, as set forth below, this Court lacks subject matter jurisdiction and Plaintiffs' Complaint should be dismissed for three main reasons.

First, Plaintiffs fail to carry their burden of demonstrating Article III standing for their claim. Specifically, Plaintiffs fail to demonstrate concrete, particularized, and actual or imminent injury-in-fact that is fairly traceable to the Corps' conduct, and they fail to demonstrate that their alleged injuries can be redressed by a favorable ruling from this Court. Second, the Corps' Letter does not qualify as a final agency action under the APA because it is neither the consummation of the agency's decision-making process, nor does it determine any rights or obligations. Finally, Plaintiffs' claim is not prudentially ripe for judicial review since the proposed renewable energy terminal

Defs.' Motion to Dismiss and Memorandum                                                              1

project that is at the heart of many of Plaintiffs' alleged grievances require further approvals and authorizations from the Corps. And until the Corps concludes its review, there is no certainty. As a result, this Court lacks jurisdiction and Plaintiffs' claim must be dismissed.

## II.    BACKGROUND

### A.  Legal Background

#### 1.  Rivers and Harbors Act

The Rivers and Harbors Act was passed in 1899 to provide for the "construction, completion, repair, and preservation of" public works. 30 Stat. 1121 (Mar. 3, 1899). Section 14 of the Rivers and Harbors Act is codified in Title 33, which addresses navigation and navigable waters. 33 U.S.C. § 408 ("Section 408"). Section 408 generally makes it unlawful for a person to "take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, ... or in any manner whatever impair the usefulness of any ... work built by the United States,... in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods…." 33 U.S.C. § 408(a). As presently codified, the Corps "may," however, allow the alteration, permanent occupation, or use of such public works when, in its judgment, such activity (1) "will not impair the usefulness of such work" and (2) "will not be injurious to the public interest." *Id*. The Corps has not issued implementing regulations for Section 408, instead relying on Section 408 guidance found in Engineer Circular ("EC") 1165-2-220, *Policy and Procedural Guidance For Processing Requests To Alter US Army Corps Of Engineers Civil Works Projects Pursuant To 33 USC 408*. U.S. Army Corps of Engineers, EC No. 1165-2-220 (Sept. 10, 2018), https://www.mvs.usace.army.mil/Portals/54/EC_1165-2-220.pdf.

Defs.' Motion to Dismiss and Memorandum                                    2

### B. Factual Background

NEXT submitted a Joint Permit Application ("JPA") for necessary Corps permit associated with NEXT's proposed project. *See* Exhibit A, Declaration of Katherine Mott, at Attachment 1 (JPA). NEXT proposed "to build a renewable fuels facility (Facility) to supply renewable fuels to West Coast markets" ("proposed facility"). *Id*. at 2. The proposed facility will be located at the Port Westward Industrial Park, near Clatskanie, Columbia County, Oregon. *Id*.

In order to construct and operate its proposed facility, NEXT would require several state and federal permits, "an Individual 404 Permit from U.S Army Corps of Engineers [Department of the Army Permit], [1] a Removal/Fill permit from the Oregon Department of State Lands, and an Individual 401 Certification from the Oregon Department of Environmental Quality." *See id.* at 2. Among other environmental compliance factors, the Section 404 permits cannot be issued until after the Corps complies with the National Environmental Policy Act by completing either an environmental assessment or environmental impact statement ("EIS"). *See* 33 C.F.R. § 325.2(a)(4) ("A decision on a permit application will require either an environmental assessment or an environmental impact statement unless it is included within a categorical exclusion."). The environmental review for the proposed facility is still under consideration by the Corps, with an anticipated completion date of November 2025. *See* ECF No. 10-1.

---

[1] A Corps' Individual Section 404 Permit is a permit issued by the Corps when a project is likely to have a significant impact on the environment. The Corps issues permits under Section 404 of the Clean Water Act, which regulates the discharge of fill or dredged material into the United States' waters.

Defs.' Motion to Dismiss and Memorandum                                    3

In order to aid construction of the proposed facility, NEXT plans to transport some construction and facility equipment to the site via barge and unload the equipment at the existing concrete dock located near the mouth of the Bradbury Slough levee ("the levee"). JPA at 7. The levee is a Corps federally constructed civil works project owned and operated by the Beaver Drainage Improvement Company—the non-federal sponsor. After unloading from the barges, the equipment will be loaded onto trucks at the dock and will be driven south along Kallunki Road to the project site or to the south laydown area in Staging Area 3, located between Kallunki Road and the railroad tracks." *Id*. Kallunki Road is an existing road that partly runs along the crest (on top) of the Bradbury Slough levee. *See* JPA at 23; *see also* Exhibit B, Declaration of Esosa Aimufua, at Attachment 1 (Oregon Department of Transportation Map), Attachment 3 (Google Earth Screen Shot of Kallunki Road Oregon). In its JPA, NEXT represented that the use of the road will be consistent with current and past activities, and that trucks will not exceed the maximum weight capacity or the limits allowable for the road under Oregon Department of Transportation Truck Weight Limits. JPA at 7, 23.

In April 2022, after a review and evaluation which included subject matter experts in navigation, levee safety, and real estate, the Corps sent a letter informing NEXT that its use of the road would not result in an alteration to a Corps civil works project that would require a full Section 408 review and permission. *See* April 7, 2022, Letter, ("Corps' Letter"), Pls.' Compl. Exhibit 1, ECF No. 1-1. The Corps' evaluation was guided by Section 408 of the Rivers and Harbors Act and the EC. The purpose of the EC "is to provide policy and procedural guidance for processing requests by private, public, tribal, or other federal entities to make alterations to, or temporarily or permanently occupy or use, any U.S Army

Corps of Engineers (USACE) federally authorized Civil Works project under [Section 408]." EC No. 1165-2-220, https://www.mvs.usace.army.mil/Portals/54/EC_1165-2-220.pdf.

The Corps reasoned that, because the work consists of moving material along a haul road—Kallunki Road—and because NEXT will not use the road on top of the levee beyond its existing uses, NEXT does not need permission from the Corps under Section 408. *See generally* ECF No. 1-1, *see also* JPA at 23. Based on NEXT's proposed plan, there is no potential to alter or impact the levee beyond its existing uses. *Id*. The Corps' Letter was based on the observation that NEXT's use of the road will not result in any alterations to the levee's integrity. ECF No. 1-1. Further, NEXT proposed to prepare a geotechnical study of the road prior to construction to determine the weight capacity of the road and proposes that the trucks will not exceed the maximum weight capacity or the limits allowable for the road under Oregon Department of Transportation Truck Weight Limits." JPA at 7. Trucks that do not exceed the weight capacity of the road will neither alter the road nor the levee. The Corps' Letter stated that if NEXT's plans changed, or if the proposed work negatively affects the levee, the Corps may reevaluate whether Section 408 permission is necessary. ECF No. 1-1.

### C. Procedural Background

On May 30, 2024, Plaintiffs Columbia Riverkeeper and 1000 Friends of Oregon, brought suit under the APA alleging *inter alia* that "the NEXT Refinery [Project] must go through a full § 408 review to ensure that the Project will not damage [the levee]." Compl. ¶¶ 9, 60. Plaintiffs ask the Court to set aside the Corps' Letter as arbitrary and capricious and not in accordance with law. *Id*. ¶¶10, 69; Prayer for Relief.

### III.    STANDARD OF REVIEW

Jurisdiction is a threshold issue that must be addressed before considering the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–96 (1998). Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss any claim for which it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *see also Baker v. Carr*, 369 U.S. 186, 198 (1962). The burden of proving subject matter jurisdiction rests with plaintiff, the "party invoking the federal court's jurisdiction." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts are courts of "limited jurisdiction," and are presumed to lack jurisdiction unless a plaintiff establishes its existence. *Kokkonen*, 511 U.S. at 377. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler*, 598 F.3d at 1122.

A challenge to jurisdiction under Rule 12(b)(1) "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). In a facial challenge, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.; *see also Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (same). In resolving a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039. The court "need not presume the truthfulness of the plaintiff's allegations." *Id*.

## IV.    ARGUMENT

Plaintiffs' Complaint should be dismissed in its entirety for three reasons. First, Plaintiffs have not adequately alleged actual or imminent injury-in fact to themselves that is fairly traceable to the Corps' conduct and which this Court can redress. Second, Plaintiffs have not pled an adequate APA case since they do not challenge any Corps final agency action. Specifically, the Corps' Letter does not determine any rights or obligations, nor does it result in any legal consequences for the applicant or Plaintiffs. Finally, Plaintiffs' claim is not prudentially ripe for judicial review since the proposed facility remains under review. As such, Plaintiffs Complaint should be dismissed for lack of jurisdiction.

### A. Plaintiffs have not established standing.

Under the well-established standing standard, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)).

"[O]rganizations may have standing "to sue on their own behalf for injuries they have sustained." *All. for Hippocratic Med.*, 602 U.S. at 393–94. To establish organizational standing, an organization must demonstrate that it meets the standing requirements itself. *Id.*; *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378- 79 (1982). "[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved.'" *Sierra Club v. Morton*, 405 U.S. 727, 739

(1972). An organization may bring claims based on associational standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Commercial Workers Union Local. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

1. **Plaintiffs fail to adequately allege injury-in-fact for their claim.**

The Supreme Court recently reiterated that injury must be concrete, i.e., "real and not abstract," and particularized, i.e., "the injury must affect 'the plaintiff in a personal and individual way,' and not be a generalized grievance." *All. for Hippocratic Med.*, 602 U.S. at 368, 381 (quoting *Lujan*, 504 U.S. at 560 n.1). The Court emphasized that the standing test screens out those who have only general legal, ideological, or policy objections to governmental action, or who simply believe the government is acting illegally. *See id.* "[S]tanding is not dispensed in gross. If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. That is of course not the law." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). "Moreover, the injury must be actual or imminent, not speculative — meaning that the injury must have already occurred or be likely to occur soon." *All. for Hippocratic Med.,* 602 U.S. at 381.

Here, Plaintiffs have failed to allege a concrete or particularized injury or allege facts to demonstrate that the Corps' Letter affects their members. Compl. ¶¶ 1-69. In the letter, the Corps noted that "the proposed project will not alter, occupy or use a USACE federally

authorized project [(the levee)] and therefore does not require permission from the [Corps] under Section 408." *See* ECF No. 1-1. In other words, because NEXT will not use the road on top the levee beyond its existing use, it does not need permission from the Corps under Section 408. Plaintiffs, however, do not explain how this conclusion causes any actual or imminent injury to them. Plaintiffs also do not even allege that they use the road or that they are injured by the road. Here, the haul road on the levee is already existing and Plaintiffs do not allege that the presence of the road on the levee will injure them. Therefore, since NEXT will not use the road on top the levee beyond its existing use and the Corps determined that it does not need permission under Section 408 to do so, there is no injury to Plaintiffs.

Plaintiffs make several allegations in their Complaint, but none adequately allege injury in fact for purposes of standing. For example, Plaintiffs allege that "[t]here is reasonable risk that the project will damage the … levee, leading to increased flooding." Compl. ¶19; *see also id.* ¶¶ 8, 16-19. Plaintiffs also allege "environmental harms flowing from the NEXT refinery" that would allegedly produce air pollution, rail and barge traffic, and risk a spill or flooding behind the levee. Compl. ¶¶40-49; *see also* Compl. ¶16-19. But this are speculative, not imminent, and not sufficient to satisfy the injury-in-fact prong for several reasons.

First, to the extent that Plaintiffs' use of "the project" is referring to alleged harms from the construction or operation of the proposed facility, those harms do not emanate from NEXT's trucks using the road. Thus, there is no actual injury that has occurred or is imminent and that relates to the Corps' Letter. The proposed facility is not the topic of this lawsuit. Importantly, these alleged injuries are generalized, speculative and focus on

Defs.' Motion to Dismiss and Memorandum    9

hypothetical future harms emanating from the construction and operation of the proposed facility which has not been fully reviewed, authorized, or even built. *See Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) ("allegations of *possible* future injury are not sufficient."). To the extent that Plaintiffs' grievance is related to the construction or operation of the proposed facility, there is no injury-in-fact to Plaintiffs from a facility that does not exist. Courts have consistently held that generalized, speculative or hypothetical injuries are insufficient to confer standing. *See e.g. All. for Hippocratic Med.*, 602 U.S. at 369 (emphasizing that standing cannot be based on speculative fears of future harm that may never materialize).

Second, Plaintiffs do not explain how NEXT's use of the road will damage the levee and injure their members. The road is already being used by other motorists and, since NEXT proposes to use the road "consistent with current and past activities," there is no change in existing conditions and thus, no injury to Plaintiffs. *See* JPA at 23. To the extent that Plaintiffs argue that NEXT's trucks driving on the road will harm the levee, they do not explain how NEXT's use would differ from other trucks, cars, or bikes driving on the same existing road and cause harm to Plaintiffs. *See* Compl. ¶ 8.

As explained, *supra* Section II (B), Kallunki Road is an existing road not owned or managed by the Corps. *See also* Exhibit B. And NEXT has not proposed to do anything that will change the road or affect the underlying levee. *See generally*, JPA at 2,7. NEXT also represented that it plans to use the road consistent with the current and past activities. *Id*. at 23. And the trucks will not exceed the maximum weight allowable for the road. *Id*. at 7. And the Corps' Letter "does not obviate the need to obtain other federal, state or local authorizations required by law." *See* ECF No. 1-1. Thus, there is no injury due to the

Defs.' Motion to Dismiss and Memorandum                                                    10

current and past use of the road.

Lastly, Plaintiffs allege that "NEXT has acknowledged the need to perform a "geotechnical study of [the road]…prior to construction to determine the weight capacity of the road." Compl. ¶4. Plaintiffs, however, ignore the next sentence from NEXT's JPA which states that "Trucks will not exceed the maximum weight capacity or the limits allowable for the road under Oregon Department of Transportation Truck Weight Limits." JPA at 7. Thus, because NEXT is not exceeding the maximum weight capacity on the road, Plaintiffs have not met their burden to show there will be an alteration to the road or the underlying levee that would result in actual harm to Plaintiffs.

Plaintiffs have failed to allege injury that is actual or imminent, and not speculative. Their Complaint should therefore be dismissed.

### 2. Plaintiffs do not adequately allege causation.

Even if they had alleged cognizable injuries, Plaintiffs fail to establish causation because they fail to link their alleged injuries to the Corps' Letter. For Article III standing, a plaintiff must establish that their alleged injuries are fairly traceable to the actions of the defendant, as opposed to the "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation omitted). The plaintiff must establish that their injury likely was caused or likely will be caused by the defendant's conduct. *All. for Hippocratic Med.*, 602 U.S. at 382; *see also Lujan*, 504 U.S. at 561–562.

Here, Plaintiffs' challenge the Corps' conclusion that NEXT does not need permission from the Corps under Section 408, to drive its trucks on the haul road. Compl. Prayer for Relief. But Plaintiffs do not link the Corps' Letter to their alleged harm or explain how the Corps not preventing or authorizing NEXT to do anything causes Plaintiffs any

harm. For example, Plaintiffs allege that "construction of the NEXT Refinery threatens to exacerbate … problems" and would "increase air pollution," and lead to more barge and rail traffic. Compl. ¶¶3, 16-19. They also allege that "[t]here is reasonable risk that the project will damage the [levee], leading to increased flooding." Compl. ¶ 19. But these allegations are not harms that derive from the Corps' Letter.

Beginning with Plaintiffs' alleged harms from the proposed facility itself, these alleged harms derive from the future construction or operation of the proposed facility. But the Corps has not authorized any construction, as the Department of the Army Section 404 permit application is still in the review process. If the Corps eventually decides to issue this permit, that decision would constitute a final agency action that may have a causal link to construction or operation-based harm at the facility. This case, however, challenges the Corps' Letter, which did not authorize anything, let alone construction. Thus, any potential harm from the operation of the proposed facility has nothing to do with what Plaintiffs are challenging right now and they have not linked the Corps' action to their injury.

The same is true with respect to NEXT's planned use of Kallunki Road. The Corps has *not* authorized NEXT to use the road; it has simply said NEXT does not need a Corps authorization to do so. Indeed, the Corps is not the local traffic agency that would have the authority to regulate traffic. In the Complaint, Plaintiffs do not identify any authority by which the Corps would manage the road or any requirement that the Corps is the entity that manages transportation. As explained, *supra* Section II(B); Section IV (A)(1), Kallunki Road is an existing road in Oregon not owned or managed by the Corps. Injuries from NEXT's use of an already existing road cannot be said to have derived from the Corps' Letter.

Perhaps Plaintiffs' true grievance is the existence of the road itself. The existence of

Defs.' Motion to Dismiss and Memorandum                                                        12

the road, however—and any harm that may derive from it—has no relation to the Corps' conduct for which Plaintiffs challenge in the Complaint. Plaintiffs have not challenged any Corps action related to the original construction of the road, which has long existed. Additionally, if NEXT changes its plans and decides it needs to alter the road, the Corps' Letter acknowledges that the Corps may need to reconsider its conclusion that Section 408 is not implicated. *See* ECF No. 1-1.

In sum, Plaintiffs alleged injuries are based on NEXT's use of an existing road, but those injuries are not fairly traceable to the Corps' Letter informing NEXT that Section 408 permission was not needed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-891 (1990) ("Under the terms of the APA," a plaintiff "must direct its attack against some particular 'agency action' that causes it harm."). "Without the causation requirement, courts would be 'virtually continuing monitors of the wisdom and soundness' of government action." *All. for Hippocratic Med.*, 602 U.S. at 383-84 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)). Here, Plaintiffs' allegations fail to demonstrate the requisite causation.

### 3. Plaintiffs' claims are not redressable.

Finally, Plaintiffs have not demonstrated that a favorable ruling from this Court would redress their alleged injuries. Redressability exists only where the requested relief would remedy a plaintiff's alleged injury directly. *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (ruling that plaintiffs must show an injury to themselves that is likely to be redressed by a favorable decision). Here, Plaintiffs seek to "[s]et aside and vacate" the April 2022 letter as arbitrary and capricious. *See* Compl., Prayer for relief. But even if the Court were to set aside and vacate the Corps' Letter, Plaintiffs' claim will not be redressable for two reasons.

First, as to the road, unless the nature of NEXT's plans changes and proposes work that has the potential to negatively impact the underlying levee, NEXT—like other motorists—is free to use the already existing road. Assuming the Corps' Letter was set aside and vacated, other motorists including NEXT's trucks (unrelated to the proposed facility) will still travel on Kallunki Road. This is because NEXT is simply proposing to drive its trucks on an existing road. And the Complaint (correctly) does not allege that Corps constructed, owns, maintains, or regulates traffic on Kallunki Road. In other words, vacatur of the Corps' Letter would simply leave NEXT (and Plaintiffs' alleged harms) in the same place they are today. It would not suddenly create a legal prohibition against NEXT's use of the road.

Second, with respect to any alleged harms from the construction or operation of the energy facility, setting aside the Corps' Letter and requiring the Corps to conduct a "full Section 408 review" will not halt the possible construction or operation of the proposed facility. Plaintiffs' concerns about the alleged environmental risks posed by the operation of the proposed facility are unrelated to the Corps' Letter and would not be addressed through this Court's ruling in this case. Nor would a Corps conclusion that NEXT *does* require a Section 408 permission have anything to do with construction or operational harms at the proposed facility site.

In *Allen v. Wright*, 468 U.S. 737 (1984), the Supreme Court held that plaintiffs must show that a favorable court ruling would likely remedy their alleged injuries. Plaintiffs' alleged harms emanate from use of an already existing road not tied to any Corps authorization, and from future construction and operation of the proposed facility. But neither of those harms would be remedied by remand or vacatur of the Corps' April 2022

Defs.' Motion to Dismiss and Memorandum                                              14

letter. The Complaint should therefore be dismissed.

**B. Plaintiffs have failed to otherwise plead a valid APA claim.**

In addition to a failure to demonstrate standing, Plaintiffs' fail to challenge a final agency action under the APA. 5 U.S.C. § 704. *See Nw. Ctr. for Alternatives to Pesticides v. U.S. Dep't of Homeland Sec.*, 552 F. Supp. 3d 1078, 1086 (D. Or. 2021) (noting that if a plaintiff does not challenge a final agency action within the meaning of the APA, a court lacks subject matter jurisdiction to hear their claim).

The APA makes reviewable "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Nat'l Wildlife Fed'n*, 497 U.S. at 882-83. For an agency action to be reviewable under the APA, it must be "final." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803 816 (9th Cir. 2017). Under the Supreme Court's test in *Bennett v. Spear*, 520 U.S. 154 (1997), two conditions must be satisfied for agency action to be considered final: (1) "the action must mark the 'consummation' of the agency's decision-making process[;] it must not be of a merely tentative or interlocutory nature[,]" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" 520 U.S. at 177-78 (internal citations omitted). The Corps' Letter does not meet either of these criteria and thus does not constitute a final agency action challengeable under the APA.

**i.    The Corps' Letter does not constitute the consummation of the Corps' decision-making process.**

Plaintiffs contend that the Corps' Letter is a final agency action and seek judicial review of the letter. Compl. ¶63. Plaintiffs are wrong. The Corps' Letter merely clarifies that Section 408 permission is not required for the use of the existing public road located on top of the levee, but this clarification does not represent the "consummation" of the Corps'

Defs.' Motion to Dismiss and Memorandum                                      15

decision-making process with respect to the larger project proposed by NEXT. Indeed, the Corps stated that the letter "does not obviate the need to obtain other federal, state or local authorizations required by law." *See* ECF No. 1-1. The proposed facility is still subject to a wide array of additional regulatory reviews, permits, and authorizations. *Supra* Section II(B). Specifically, the proposed facility is currently undergoing review, including the preparation of an EIS, which remains in process. *See* ECF No 10-1.  Until these processes are complete and the Corps should decide to issue the necessary Corps authorization, no final determination has been made with respect to the application before the Corps. The Corps' Letter regarding Section 408 is simply one preliminary step in a much broader regulatory framework that has not yet reached its conclusion.

Because the Corps' clarification regarding the use of the road does not resolve the entire permitting process and the proposed facility remains under active review, the agency's decision-making process is not yet complete, and the letter does not represent a final agency action under the first prong of the *Bennett* test. Moreover, the Corps stated that it "retains the right to revoke this Section 408 determination at any time if the proposed work negatively affects the federally authorized project or if the project plans change." *See* ECF No. 1-1. *See also San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 577 (9th Cir. 2019) (stating that agency action that is "merely tentative or interlocutory" in nature is not final agency action).

ii.     **The Corps' Letter does not determine any rights or obligations, nor does it have legal consequences**

"An agency action may be final if it has a 'direct and immediate' effect on 'the day-to-day business' of the subject party; courts consider whether the action has the 'status of law or comparable legal force, and whether immediate compliance with its terms is

Defs.' Motion to Dismiss and Memorandum                                                    16

expected.'" *Nw. Ctr. for Alternatives to Pesticides*, 552 F. Supp. 3d at 1089 (quoting *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006). The Corps' clarification that Section 408 permission is not required for the use of the road does not determine any rights or obligations, nor does it impose any legal consequences on NEXT, Plaintiffs, or any other party. Under the second prong of the *Bennett* test, final agency action "must be one by which 'rights or obligations have been determined' or have direct 'legal consequences.'" 520 U.S. at 178. Here, the Corps' Letter is purely informational and clarifies the limited issue of whether Section 408 permission is required for the use of an existing road on top of the levee. "[A] court should "focus on the practical and legal effects of the agency action" and interpret finality "in a pragmatic and flexible manner."' *Nw. Ctr. for Alternatives to Pesticides*, 552 F. Supp. 3d 1078, 1089 (citing *Or. Nat. Desert Ass'n*, 465 F.3d at 982).

Here, the Corps' clarification that Section 408 permission is unnecessary for the road, does not authorize or preclude any construction or further action by NEXT. In fact, NEXT must still obtain an array of other federal, state, and local approvals before any part of the proposed facility can proceed. An agency action is not final if it merely starts a process and does not directly impose any obligations or consequences on the parties involved. *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 593 (9th Cir. 2008), Similarly, the Corps' Letter does not trigger any enforcement, penalties, or obligations under federal law, nor does it resolve the project's ultimate legality or environmental impact. Because the permitting, authorization, and environmental review process remain incomplete, Plaintiff's challenge is speculative, as no rights or obligations have been determined.

Thus, because the Corps' Letter does not meet the two prongs laid out in *Bennett*, it is not a final agency action under the APA and Plaintiffs' Complaint should be dismissed for

Defs.' Motion to Dismiss and Memorandum                                                    17

this reason.

    **C. Plaintiffs' claim should be dismissed because it is not prudentially ripe**.

In addition to their failure to challenge a final agency action under the APA, Plaintiffs' claim is not yet ripe for judicial review. The ripeness doctrine is "designed to ensure that courts adjudicate live cases or controversies and do not 'issue advisory opinions [or] declare rights in hypothetical cases.'" *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (alternation in original). The prudential ripeness inquiry is "guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. at 1154 (quoting *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1141 (9th Cir. 2000)). Neither consideration supports the conclusion that Plaintiffs' alleged claim is ripe for review.

First, the issues here are not fit for a judicial decision because NEXT needs further authorizations from the Corps in order to build its proposed facility. *Supra* Section II(B). And until the Corps concludes it review and EIS, there is no certainty that those authorizations will be granted, and if granted, the conditions that would accompany it. Thus, judicial economy would counsel against proceeding with this case because it may never be necessary. Also, reviewing Plaintiffs' claim before the Corps reviews and makes a final decision on the required authorizations may "inappropriately interfere with further administrative action." *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (ruling that a court review now, could interfere with the system that Congress specified for the Forest Service to reach its decisions).

Second, delayed review would not cause hardship to Plaintiffs because the Corps' letter has not caused any adverse effects. *Supra* Section IV(A)(1). In other words, NEXT has

Defs.' Motion to Dismiss and Memorandum           18

not been authorized to build the proposed facility; as such, no activity related to it, including transporting equipment using the road, will be happening until after at least November 2025. *See* ECF No. 10-1. As explained, *supra* Section II(B), the Corps is currently in the process of completing the EIS and other environmental review, which it is preparing in conjunction with its review of NEXT's application for a Department of the Army Permit for the proposed facility. *See* ECF No. 10-1. The Department of the Army Permit cannot be issued until after this EIS has concluded, and the proposed facility cannot move forward without the Permit. *See* 33 C.F.R. § 325.2(a)(4). Therefore, Plaintiffs' claim is not ripe for judicial review and the Court must dismiss their Complaint.

## V.    CONCLUSION

Plaintiff's complaint should be dismissed for lack of jurisdiction. First, Plaintiffs have failed to carry their burden of adequately alleging that they have standing to bring their claims. Importantly, Plaintiffs fail to demonstrate concrete, particularized, and actual or imminent injury-in-fact that is fairly traceable to the Corps' letter. And Plaintiffs fail to demonstrate that their injuries can be redressed by this Court's ruling. Second, Plaintiff failed to identify a final agency action subject to APA review and have therefore failed to adequately plead an APA challenge. Finally, Plaintiffs' claim is not prudentially ripe for judicial review since the Corps' approval of the proposed project at large is still on-going. For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiffs' Complaint.

Respectfully submitted this 27th day of September 2024.

TODD KIM
Assistant Attorney General

*/s/Esosa Aimufua*
ESOSA AIMUFUA
United States Department of Justice
Environment and Natural Resources
Section
Natural Resources Section
P.O. Box 7611,
Washington, DC 20044-7611

*Attorney for the Defendants*