IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| COLUMBIA RIVERKEEPER and 1000 FRIENDS OF OREGON, | Case No.: 3:24-cv-00868-AN |
| Plaintiffs, | |
| v. | OPINION AND ORDER |
| COLONEL LARRY "DALE" CASWELL, JR., in his official capacity as Commander and District Engineer of the U.S. Army Corps of Engineers Portland District, and U.S. ARMY CORPS OF ENGINEERS, | |
| Defendants. | |

Plaintiffs Columbia Riverkeeper and 1000 Friends of Oregon ("1000 Friends") bring this action against defendants Colonel Larry "Dale" Caswell, Jr., in his official capacity as Commander and District Engineer of the U.S. Army Corps of Engineers Portland District, and the U.S. Army Corps of Engineers (the "Corps" or "USACE"), challenging the legality of the Corps' Section 408 determination under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* On September 27, 2024, defendants moved to dismiss for lack of subject matter jurisdiction. The Court heard oral argument from the parties on June 10, 2025. For the reasons stated below, defendants' motion to dismiss is DENIED.

## LEGAL STANDARD

Pursuant to Article III of the United States Constitution, federal courts have limited jurisdiction and may hear only live "[c]ases" and "[c]ontroversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2. Whether a party has standing and whether a claim is ripe for adjudication both go to a court's subject matter jurisdiction under Article III's case or controversy clause. *See In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011) (standing); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (ripeness). "Because standing and ripeness pertain to federal

courts' subject matter jurisdiction, they are properly raised in a [Federal Rule of Civil Procedure ('FRCP')] 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *St. Clair*, 880 F.2d at 201; *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

A motion to dismiss brought under FRCP 12(b)(1) "may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citations omitted) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"The district court resolves a facial attack as it would a motion to dismiss under [FRCP] 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). On the other hand, in resolving a factual attack, the court may "rely on affidavits or any other evidence properly before the court." *St. Clair*, 880 F.2d at 201 (citations omitted); *see Leite*, 749 F.3d at 1121. "'No presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Thornhill Publ'g Co.*, 594 F.2d at 734 (internal parentheses omitted) (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (1977)). If the movant presents a factual attack, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *St. Clair*, 880 F.2d at 201). Thus, the burden of proof remains with a plaintiff, who has "an affirmative obligation to support jurisdictional allegations with proof." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (citing *Leite*, 749 F.3d at 1121).

Importantly, however, "a jurisdictional finding of genuinely disputed facts is inappropriate

when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air for Everyone*, 373 F.3d at 1039 (citation modified).  "If the 'existence of jurisdiction turn[s] on disputed factual issues,' and those 'jurisdictional disputes [are] not intertwined with the merits of the claim,' then 'it [falls] to the district court to resolve those factual disputes itself.'" *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024) (quoting *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021)). However, "when jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" *Id.* (quoting *Leite*, 749 F.3d at 1122).

## BACKGROUND

### A.    Rivers and Harbors Act

Section 14 of the Rivers and Harbors Act, more commonly known as "Section 408," prohibits "any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any . . . work built by the United States[.]"  33 U.S.C. § 408.  Congress authorizes the Corps to "grant permission for the alteration or permanent occupation or use of any of the aforementioned public works when in the judgment of the Secretary [of the Army] such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work."  *Id.*

The Corps has not promulgated regulations under its Section 408 authority.  Instead, Engineer Circular 1165-2-220 ("EC 1165-2-220") describes the Corps' review of a Section 408 approval request.  *See* U.S. Army Corps of Engineers, EC 1165-2-220, *Policy and Procedural Guidance for Processing Requests to Alter US Army Corps of Engineers Civil Works Projects Pursuant to 33 USC 408* (Sept. 10, 2018) ("EC 1165-2-220") (accessible at https://www.mvs.usace.army.mil/Portals/54/EC_1165-2-220.pdf); 83 Fed. Reg. 46486 (Sept. 13, 2018) (adopting EC 1165-2-220 following completion of notice-and-comment process).  In November 2023, the Corps reaffirmed and extended EC 1165-2-220 "until such a time [it] is superseded by rulemaking."  U.S. Army Corps of Eng'rs, *Memorandum for Commanders,*

*Major Subordinate Command and Districts Re: Extension of EC 1165-2-220, Policy and Procedural Guidance for Processing Requests to Alter US Army Corps of Engineers Civil Works Projects Pursuant to 33 U.S.C. 408* (Nov. 14, 2023) (accessible at https://www.nap.usace.army.mil/Portals/39/docs/regulatory/408/EC-1165-2-220-Extension-14-Nov-2023-Signed.pdf?ver=-9WO4vs44NbVRFweHZ2T0A%3D%3D).

Pursuant to EC 1165-2-220, the Corps requires project applicants who are not the non-federal sponsor to obtain a "Statement of No Objection" from the non-federal sponsor of the project that the applicant seeks to use. EC 1165-2-220, *supra*, at 16. "If a Statement of No Objection cannot be obtained, the district will not proceed with the Section 408 review," with five limited exceptions, *id.* at 16-17, that are not at issue in this case. The Corps must then "coordinate with non-federal sponsors throughout the [Section 408] review process and ensure feedback from non-federal sponsors is considered prior to [] rendering a final decision on the Section 408 request." *Id.* at 16.

## B.    Factual Allegations

Columbia Riverkeeper is a non-profit corporation with more than 16,000 members. Compl. ¶¶ 15-16. Its mission "is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean." *Id.* ¶ 15. 1000 Friends is a non-profit corporation with more than 1,800 members. *Id.* ¶¶ 17-18. Its mission "is to enhance Oregonians' quality of life by building livable urban and rural communities, protecting family farms and forests, and conserving natural areas." *Id.* ¶ 17.

NXTClean Fuels ("NEXT"), which is not a party to this action, "seeks to build a [] 'renewable diesel' fuel refinery" (the "Proposed Refinery") at the Port Westward Industrial Park ("Port Westward") on the Columbia River near Clatskanie, Oregon. *Id.* ¶ 1; Defs. Mot. to Dismiss ("Defs. Mot."), ECF [13], at 3. To construct and operate the Proposed Refinery, NEXT needs to obtain several state and federal permits: an individual Section 404 permit from the Corps, Removal-Fill permit from the Oregon Department of State Lands, and individual Section 401 certification from the Oregon Department of Environmental Quality. Defs. Mot. 3 (quoting Decl. Katherine Mott, ECF [13-1], Attach. 1 ("JPA"), at 2).

NEXT submitted a Joint Permit Application ("JPA") for the necessary Corps permit associated with the Proposed Refinery. Compl. ¶ 50; Defs. Mot. 3 (citing JPA). The Corps cannot issue an individual Section 404 permit until it completes either an environmental assessment or environment impact statement ("EIS"). *See* 33 C.F.R. § 325.2(a)(4). The Corps' environmental review of the Proposed Refinery is ongoing, "with an anticipated completion date of November 2025." Defs. Mot. 3 (citation omitted).

During the Proposed Refinery's construction, "NEXT plans to bring in heavy equipment and building materials by barge to a dock at Port Westward" and then transport those materials to the construction site using trucks. Compl. ¶ 2; *see* Defs. Mot. 4 (citing JPA 7). The trucks will be driven from the dock to the construction site by traveling on Kallunki Road (the "Road"), which sits atop the Bradbury Slough levee (the "Levee"). Compl. ¶¶ 2-3; Defs. Mot. 4 (citing JPA 7). The Levee is a Corps federally constructed civil works project owned and operated by the Beaver Drainage Improvement Company ("BDIC"), a municipal entity that is the non-federal sponsor of the project, and constitutes part of the Beaver Drainage District, a federally authorized flood damage reduction system. Compl. ¶¶ 2-3; *see* Defs. Mot. 4.

In its JPA, NEXT proposed to prepare a geotechnical study of the Road prior to construction to determine its weight capacity and represented that its use of the Road would be consistent with current and past activities and that trucks would not exceed the maximum weight capacity or the limits allowable for the Road under the Oregon Department of Transportation Truck Weight Limits. *See* Compl. ¶ 4; Defs. Mot. 5; JPA 7. Plaintiffs allege that in February 2022, a Corps employee emailed personnel responsible for the Section 408 program that the Proposed Refinery was ready for Section 408 review. Compl. ¶ 53. After a review and evaluation that included subject matter experts in navigation, levee safety, and real estate, the Corps issued a letter to NEXT dated April 7, 2022 (the "Letter"), regarding the applicability of Section 408 to the Proposed Refinery. Defs. Mot. 4-5 (referring to Compl. Ex. 1). In the Letter, the Corps informed NEXT that its proposed use of the Road as a haul road would not require a full Section 408 review and permission. Compl. Ex. 1. The Corps reasoned that the Proposed Refinery would "not alter, occupy, or use a USACE federally authorized project" because "[t]he proposal is to utilize the [L]evee as a haul road"; "[t]he proposed new construction or use as a haul road will not alter the [L]evee

system"; and "[t]he [Proposed Refinery] is not adjacent to or in navigable waters and will have no impact to navigation." *Id.* Therefore, the Corps concluded that NEXT does not need permission from the Corps under Section 408. *Id.* The Letter also stated that if NEXT's plans changed, or if the proposed work negatively affects the Levee, the Corps may reevaluate whether Section 408 permission is necessary. *Id.*

Plaintiffs seek to set aside the Corps' Section 408 determination in the Letter "as arbitrary and capricious and not in accordance with law[.]" *Id.* ¶ 10. Plaintiffs allege that the Proposed Refinery "will plainly 'make use of' the [L]evee and could 'alter' or even 'injure' the [L]evee" and that the Corps' determination that NEXT does not need permission from the Corps under Section 408 "is legally erroneous." *Id.* ¶¶ 6-7. Plaintiffs allege that the Letter "fails to grapple with the threat that driving trucks loaded with heavy construction equipment and refinery components over the [L]evee will 'alter' or even 'injure' the [L]evee within the meaning of [Section] 408." *Id.* ¶ 8. Plaintiffs allege that such use "could lead to increased flooding, which would likely contaminate water sources behind the [L]evee that are used for farming and domestic use." *Id.* Accordingly, plaintiffs allege that the Letter "erroneously concludes that the [Proposed] Refinery need not go through [Section] 408 review" and "fails to provide a reasoned explanation for the Corps' [Section] 408 determination in light of the record before the agency." *Id.* ¶ 69.

Plaintiffs allege that many of their members "use the waters and lands near the [Proposed] Refinery for . . . aesthetic, economic, recreational, scientific, and spiritual" purposes. *Id.* ¶¶ 16, 18. Plaintiffs allege that those interests "will be adversely impacted if the [Proposed] Refinery is built[] because [it] will increase air pollution, lead to more barge and rail traffic and associated noise and other disturbances, destroy over 100 acres of wetlands, raise the risk of a catastrophic diesel fuel spill, lead to a higher risk of flooding and water pollution, and cause other environmental harms[.]" *Id.* Plaintiffs allege that for their members "who reside near the [Proposed] Refinery, the likely adverse effects [] are even worse[,]" including "a reasonable risk that the [Proposed Refinery] will damage the [] [Levee]" and "lead[] to increased flooding[,]" and the threat that "water pollution caused by the [Proposed] Refinery will contaminate water supplies used for farming and domestic uses[.]" *Id.* ¶ 19. Hereinafter, the Court refers to the alleged adverse impacts specific to the Levee as the "Levee Harms," the adverse impacts alleged to

result from the Proposed Refinery generally as the "Refinery Harms," and the Levee Harms and Refinery Harms together as the "Levee and Refinery Harms."

## DISCUSSION

Defendants argue that the Court lacks jurisdiction because plaintiffs lack standing, they do not challenge a final agency action, and their claim is prudentially unripe. The Court addresses each argument in turn.

**A.     Standing**

Defendants argue that plaintiffs' claim should be dismissed because plaintiffs do not adequately allege associational standing. To bring a claim based on associational standing, an organizational plaintiff must demonstrate that (1) at least one of its "'members would otherwise have standing to sue in [the member's] own right'"; (2) "'the interests at stake are germane to the organization's purpose'"; and (3) "'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 181 (2000); and citing *Nat. Res. Def. Council v. U.S. E.P.A.*, 542 F.3d 1235, 1244 (9th Cir. 2008)).

Defendants challenge only the first element of plaintiffs' associational standing. To show that at least one of its members would have standing to sue, an organizational plaintiff must allege that a member has suffered (1) "an injury in fact[,]" (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citations omitted). In environmental cases, "[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." *Friends of the Earth, Inc.*, 528 U.S. at 181. To show injury, a plaintiff must allege they have "'an aesthetic or recreational interest in a particular place . . . and that that interest is impaired by a defendant's conduct.'" *Nat. Res. Def. Council*, 542 F.3d at 1245 (quoting *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000)). For the reasons stated below, the Court finds that plaintiffs have adequately alleged associational standing.

1.    *Injury in Fact*

Injury in fact requires a showing of harm that is both (1) concrete and particularized, and (2) actual or imminent. *Lujan*, 504 U.S. at 560, 564. An injury is concrete if it is "real and not abstract[,]" and particularized if it "affect[s] 'the plaintiff in a personal and individual way[.]'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citations omitted). Moreover, an injury is actual or imminent if it has "already occurred or [is] likely to occur soon." *Id.* (citation omitted). "[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Id.* (citation omitted).

Plaintiffs argue that they have standing based on the Levee and Refinery Harms, as well as to the extent that they allege a procedural injury. Defendants argue that with respect to the Levee and Refinery Harms, plaintiffs fail to adequately allege an injury in fact or demonstrate that the Letter affects plaintiffs' members. Defendants also argue that plaintiffs do not allege a procedural injury in their complaint and should therefore not be allowed to assert one in their response to defendants' motion to dismiss.

a.    Procedural Injury

A plaintiff alleging a procedural injury "must show that '(1) the agency violated certain procedural rules; (2) these rules protect [the] plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests.'" *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 918 (9th Cir. 2018) (internal alterations omitted) (quoting *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1232 (9th Cir. 2017)). "A showing of procedural injury lessens a plaintiff's burden on the last two prongs of the Article III standing inquiry, causation and redress[a]bility." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 572 n.7).

As an initial matter, although the Corps has not yet issued implementing regulations for Section 408, the Corps adopted EC 1165-2-220 in 2018 following a notice-and-comment process and extended it in 2023 until such time that the Corps engages in Section 408 rulemaking. The Court finds that

8

EC 1165-2-220 thus constitutes a rule from which plaintiffs can allege a procedural violation. *See Greenwich Terminals LLC v. U.S. Army Corps of Eng'rs*, No. 23-04283 *et al.*, 2024 WL 4595590, at *16-17 (E.D. Pa. Oct. 28, 2024) (finding that Corps' failure to obtain Statement of No Objection in violation of EC 1165-2-220's procedural requirements constituted procedural injury).

However, the Court finds that plaintiffs do not allege a violation of a procedural rule. Plaintiffs detail some of the procedural requirements set out in EC 1165-2-220, *see* Compl. ¶¶ 26-30, and assert certain procedural violations in their briefing on the instant motion, *see* Notice of Suppl. Auth., ECF [21], at 3. However, nowhere in the *complaint* do plaintiffs allege that the Corps failed to follow any procedural requirement in reviewing NEXT's Section 408 request. For example, plaintiffs do not allege that the Corps did not obtain a Statement of No Objection from BDIC before beginning its review of NEXT's proposal. *See Greenwich Terminals LLC*, 2024 WL 4595590, at *11. Nor do plaintiffs allege that the Corps failed to inform the public of NEXT's proposal or provide opportunities for the public to participate in its Section 408 decision. Instead, plaintiffs allege that the Corps' Section 408 determination is arbitrary and capricious and legally erroneous in light of the record before it. Compl. ¶ 69. This allegation simply does not allege a procedural violation of EC 1165-2-220. Accordingly, because plaintiffs do not allege a violation of a procedural rule, plaintiffs do not allege a procedural injury.

b.    Levee and Refinery Harms

"It is well established 'that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity.'" *Ass'n of Irritated Residents v. U.S. E.P.A.*, 10 F.4th 937, 943 (9th Cir. 2021) (quoting *Friends of the Earth*, 528 U.S. at 183). Injury may include the increased risk of future harm to the plaintiff—*i.e.*, "'a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded.'" *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859-60 (9th Cir. 2005) (quoting *Ecological Rts. Found.*, 230 F.3d at 1149). To show future harm, a plaintiff must allege

that the injury "is 'certainly impending[]' or [that] there [is] 'a substantial risk that the harm will occur.'" *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*, 100 F.4th 1039, 1054 (9th Cir. 2024) (quoting *Phillips v. U.S. Customs & Border Patrol*, 74 F.4th 986, 991 (9th Cir. 2023)).

As an initial matter, defendants argue that plaintiffs fail to identify any individual member of their organizations who would be directly affected by the asserted Levee and Refinery Harms. However, at the pleading stage, it is not necessary to identify specific members; general allegations that plaintiffs' members live in or use the area protected by the Levee for aesthetic, economic, recreational, scientific, and spiritual purposes are sufficient. *See Nw. Env't Def. Ctr. v. Brown*, 476 F. Supp. 2d 1188, 1192 (D. Or. 2007), *vacated and remanded on other grounds sub nom. Nw. Env't Def. Ctr. v. Decker*, 728 F.3d 1085 (9th Cir. 2013); *Or. Nat. Desert Ass'n v. U.S. Dep't of the Air Force*, No. 2:24-cv-00145-HL, 2024 WL 3826134, at *3 (D. Or. Aug. 7, 2024) (citing *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992)) (finding that at the pleading stage, allegations that the plaintiff organizations' members use the areas in question for "recreational, scientific, spiritual, educational, aesthetic, and other purposes" "sufficiently alleges that one or more members would have standing to bring the claims"), *report and recommendation adopted*, 2024 WL 3925845 (D. Or. Aug. 23, 2024).

Turning to the asserted harms, the Court finds that plaintiffs allege a sufficient injury in fact. Plaintiffs need not show actual harm; "an increased risk of harm can itself be injury in fact sufficient for standing." *Ecological Rts. Found.*, 230 F.3d at 1151; *see Ocean Advocs.*, 402 F.3d at 860. As for the Levee Harms, plaintiffs allege that there is a reasonable risk that NEXT's plan to drive heavy haul trucks over a portion of the Levee will damage the Levee, leading to increased flooding that would have catastrophic effects for plaintiffs' members who live or own farmland in the area protected by the Levee. As for the Refinery Harms, plaintiffs allege that the construction and subsequent operation of the Proposed Refinery would cause tremendous environmental harms to the area around Port Westward, including the permanent destruction of wetlands; increased air pollution and greenhouse gas emissions; increased rail, barge, and ship traffic; and increased risk of water pollution and contamination. Plaintiffs allege that the

Refinery Harms would adversely affect their members' aesthetic, economic, recreational, scientific, and spiritual interests in the waters and lands near the Proposed Refinery. Because plaintiffs allege that the Levee and Refinery Harms will affect their members in a personal way, the Levee and Refinery Harms are sufficiently concrete and particularized.

Moreover, plaintiffs allege a credible threat that the Levee and Refinery Harms will occur. In *Montana Environmental Information Center v. Stone-Manning*, the Ninth Circuit held that the plaintiff's members had not alleged an actual or imminent injury in fact because the plaintiff did not allege a "substantial risk" that the defendant would approve a pending mining application. 766 F.3d 1184, 1189 (9th Cir. 2014). The plaintiff challenged the anticipated approval of the pending application, alleging that the defendant had a pattern or practice of granting applications without doing proper impact assessments of proposed mining operations. *Id.* The plaintiff alleged that its members would be injured by mining operations that have not been subjected to a proper impact assessment. *Id.* However, the court held that even assuming that the defendant would not do a proper impact assessment for the pending application, the plaintiff did not "establish a substantial risk that [the defendant would] grant the application at all" because the complaint was devoid of allegations about the likelihood of the defendant approving the application. *Id.* Because the mining would only occur if the defendant granted the application and the complaint did not allege a substantial risk of the defendant approving the application, the court held that the plaintiff did not allege a substantial risk of harm constituting an actual or imminent injury in fact. *Id.*

In contrast, in *San Luis Obispo Mothers for Peace*, the Ninth Circuit held that the plaintiffs alleged "a 'credible threat' that qualifie[d] as an actual and imminent harm[.]" 100 F.4th at 1055 (quoting *Nat. Res. Def. Council*, 735 F.3d at 878). In that case, after Pacific Gas & Electric Company ("PG&E") had been working to cease operations at two nuclear power facilities, the California legislature directed PG&E "to pursue any actions needed to extend operations[.]" *Id.* at 1044. At that point, the deadline to qualify for continued operation during the federal agency defendant's review of a license renewal application had passed, so PG&E, which held the federal licenses to operate the facilities, asked for an exemption to the timely renewal deadline. *Id.* The defendant granted the exemption request, which the

plaintiffs, "non-profit organizations concerned with the dangers posed by nuclear power," challenged. *Id.* (footnote omitted). The defendant argued that the plaintiffs lacked standing because they raised only a "speculative possibility of future risks of natural disaster or operational accident at the [nuclear] facility as there w[ould] be no changes in [how the facility] operate[d]." *Id.* at 1054. However, the defendant acknowledged "that age-related degradation [] may lead to safety and environmental risks beyond the initial [] license term that [were] different than those considered at the time [that] the initial license was evaluated." *Id.* The defendant's own documents showed that based the average application review period and the two nuclear facilities' license expiration dates, "the likelihood of at least one of [the] nuclear power [facilities] continuing operations past its initial [] license term [was] almost guaranteed, not speculative." *Id.* at 1054-55 (citation and footnote omitted). Moreover, the defendant "concede[d] that persons living within a [fifty]-mile radius of a nuclear power facility face a realistic threat of harm [in the event of] a release of radioactive materials from the facility." *Id.* at 1054. Because the plaintiffs alleged that at least one of their members live, work, or own property within fifty miles of the facility, as well as "a non-speculative potential harm from age-related safety and environmental risks" and an almost certain likelihood that the facilities would continue operations beyond their initial license term, the court held that the plaintiffs alleged a credible threat constituting an actual and imminent harm for purposes of standing. *Id.* at 1055.

Here, in defendants' view, plaintiffs raise only a speculative possibility of the Levee and Refinery Harms because the Corps' draft EIS is ongoing and NEXT must still obtain other approvals from the Corps and state agencies. Defendants argue that the Levee and Refinery Harms might only occur after NEXT receives all these approvals and begins construction and operation of the Proposed Refinery. However, "all construction projects 'are subject to some extent to [some] uncertainties[,]'" and such uncertainties alone do not defeat standing. *Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*, 659 F.2d 903, 914-15 (9th Cir. 1981) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)).

Defendants also mount factual attacks, arguing that the Levee Harms cannot occur because NEXT proposes to use the Road consistent with current and past activities and that the Levee and Refinery

Harms are not imminent because it is uncertain whether NEXT will obtain all of the approvals for the Proposed Refinery. The Court finds both factual attacks to be unavailing. Defendants' first argument is intertwined with the merits of plaintiffs' APA claim. In essence, defendants argue that the Levee Harms cannot occur because in its Section 408 determination, the Corps concluded that NEXT's proposal will not alter, occupy, or use the Levee. However, this argument goes directly to the merits question here—whether the Corps' Section 408 determination is arbitrary and capricious or legally erroneous. Because this challenge is intertwined with the merits, "the court must leave the resolution of material factual disputes to the trier of fact." *Bowen*, 118 F.4th at 1143.

Although defendants' second argument is not intertwined with the merits, defendants do not dispute that the Corps states that it denies less than one percent of all requests for regulatory permits, such as Section 404 permits. *See* Missel Decl. Ex. 5, at 1. Plaintiffs thus show that the Corps will almost certainly grant NEXT a Section 404 permit. *See San Luis Obispo Mothers for Peace*, 100 F.4th at 1054; *Mont. Env't Info. Ctr.*, 766 F.3d at 1189. As such, the Levee and Refinery Harms do not "lie at the end of a highly attenuated chain of possibilities but [are] rather a credible threat that qualifies as an actual and imminent harm." *San Luis Obispo Mothers for Peace*, 100 F.4th at 1055 (citation modified); *see Wilbur v. Locke*, 423 F.3d 1101, 1108 (9th Cir. 2005) (quoting *Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002)) ("'[O]ne does not have to await the consummation of threatened injury' before challenging a statute."), *abrogated on other grounds by Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010). Because plaintiffs show a credible threat of the Levee and Refinery Harms, the Court finds that plaintiffs have adequately alleged an injury in fact.

2.    *Causation and Redressability*

The Supreme Court has clarified that the "'fairly traceable' and 'redressability' components for standing overlap and are 'two facets of a single causation requirement.'" *Wash. Env't Council*, 732 F.3d at 1146 (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). However, they are distinct in that causation "examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief." *Id.* (citing *Allen*, 468

U.S. at 753 n.19). "[T]he traceability requirement is less demanding than proximate causation, and thus the 'causation chain does not fail solely because there are several links' or because a single third party's actions intervened." *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011); and citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)). However, a plaintiff "must show that the injury is causally linked or 'fairly traceable' to the [agency's] alleged misconduct, and not the result of misconduct of some third party not before the court." *Wash. Env't Council*, 732 F.3d at 1141 (quoting *Lujan*, 504 U.S. at 560-61). "To plausibly allege that the injury was not the result of the independent action of some third party, the plaintiff must offer facts showing that the government's unlawful conduct is at least a substantial factor motivating the third parties' actions." *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (citation modified). "So long as the plaintiff can make that showing without relying on 'speculation' or 'guesswork' about the third parties' motivations, [they have] adequately alleged Article III causation." *Id.* (citation omitted). Finally, to establish redressability, a plaintiff must show that "it is likely, although not certain, that [their] injury can be redressed by a favorable decision." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (citations omitted).

Defendants argue that plaintiffs do not adequately allege causation because the Letter does not authorize any construction, and the Corps is still reviewing NEXT's Section 404 permit application. As for the Levee Harms, defendants argue that the Corps has no authority to manage the Road, and NEXT's use of the Road cannot be said to have derived from the Corps' Section 408 determination. As for the Refinery Harms, defendants suggest that while the Refinery Harms may be traceable to a future Section 404 permit decision, they are not traceable to the Section 408 determination. Defendants also argue that plaintiffs do not adequately address redressability because NEXT would be free to use the Road as a haul road even if the Letter is vacated, and conducting a full Section 408 review will not halt the construction or operation of the Proposed Refinery.

The Court finds that plaintiffs have adequately alleged causation and redressability. Regarding causation, although the Letter does not explicitly authorize NEXT's use of the Road or any

construction, as a practical matter, the Letter provides that NEXT can use the Road as a haul road without going through Section 408 review. Despite defendants' emphasis on NEXT's actions, rather than the Corps', plaintiffs plausibly allege that the Corps' Section 408 determination would be at least a substantial factor in NEXT's use of the Road. *See Mendia*, 768 F.3d at 1013; *see also Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1518 (9th Cir. 1992) (emphasis in original) (footnote omitted) ("The third parties could not undertake their future actions *but for* the challenged decision. The [agency's] recommendation is thus the primary factor making possible subsequent development."); *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997) ("This wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation."). It is true that plaintiffs' alleged injury is partly dependent on NEXT's actions, in the sense that the Levee and Refinery Harms would not occur without NEXT's use of the Road and subsequent construction and operation of the Proposed Refinery. But the opposite is also true: had the Corps not made its Section 408 determination, the prospect of the asserted Levee and Refinery Harms would not materialize. *See Wilbur*, 423 F.3d at 1108. Defendants' argument that NEXT could use the Road as a haul road even without the Corps' Section 408 determination is not well-taken; using the Levee without permission from the Corps is a misdemeanor. *See* 33 U.S.C. § 411. It is plausible that NEXT would rely on the Corps' Letter in its use of the Road and that absent the Corps' Letter, NEXT would not act in a way to expose itself to potential criminal liability. *See Bennett*, 520 U.S. at 169-71.

By making its Section 408 determination, the Corps has determined that NEXT's proposal need not go through Section 408 review. However, putting NEXT's proposal through Section 408 review could help prevent the Levee Harms, regardless of whether the Corps approved or denied the request. If the Corps denied the Section 408 request, NEXT could not proceed with the Proposed Refinery as planned, thus avoiding the Levee Harms. On the other hand, if the Corps approved the Section 408 request, it could only do so after finding that NEXT's proposed use of the Levee would not be injurious to the public interest and would not impair the usefulness of the Levee, thus reducing the Levee Harms. Thus, if the Levee Harms were to occur, they would occur because of the Corps' purported misconduct in completely excusing

NEXT's proposal from Section 408 review.  As for the Refinery Harms, plaintiffs allege that BDIC has repeatedly raised concerns about the Proposed Refinery, suggesting that NEXT would not be able to obtain a Statement of No Objection from BDIC and Section 408 permission from the Corps.  This would also prevent NEXT from moving forward with the Proposed Refinery as planned, thereby reducing the Refinery Harms.  Therefore, if the Refinery Harms were to occur, they would occur because of the Corps' Section 408 determination, as well as the subsequent approval of NEXT's Section 404 permit.  Accordingly, plaintiffs adequately allege a causal link between the Levee and Refinery Harms and the Corps' Section 408 determination.

With respect to redressability, vacatur of the Letter would, as a practical matter, require NEXT to go through Section 408 review or face potential criminal penalties.  And as explained above, Section 408 review could help mitigate or avoid the Levee and Refinery Harms.  Moreover, the Corps is meant to "coordinate" any Section 408 review with the Section 404 permit process "and, to the maximum extent practicable, carry out the reviews concurrently[.]"  33 U.S.C. § 408(b)(2)(A); *see also* EC 1165-2-220, *supra*, at D-2 n.1 ("All final Regulatory [*e.g.*, Section 404] permit decisions will be made concurrent with or after the corresponding Section 408 decision.").  If the Letter were vacated, the Corps could not grant NEXT a Section 404 permit before or without Section 408 permission.  Accordingly, plaintiffs adequately allege that a favorable judicial decision could likely redress plaintiffs' asserted Levee and Refinery Harms.

For the foregoing reasons, plaintiffs have adequately alleged associational standing.

**B.    Final Agency Action**

Defendants next argue that plaintiffs' claim should be dismissed because the Corps has not taken a final agency action.  Where, as here, a plaintiff seeks review under the general review provisions of the APA, a plaintiff must identify a "final agency action." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (citing 5 U.S.C. § 704(b)).  For an agency action to be final, it must (1) "mark the consummation of the agency's decision[-]making process," and (2) be an action "by which rights or obligations have been determined, or from which legal consequences will flow[.]" *Bennett*, 520 U.S. at 177-78 (internal quotation

marks and citations omitted). Courts should take a "pragmatic approach" to finality. *U.S. Army Corps of Eng'rs v. Hawkes Co*, 578 U.S. 590, 599 (2016) (internal quotation marks and citation omitted); *see Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1108 (9th Cir. 2025) (quoting *Saliba v. U.S. Sec. & Exch. Comm'n*, 47 F.4th 961, 967 (9th Cir. 2022)) ("'We also focus on the practical and legal effects of the agency action: The finality element must be interpreted in a pragmatic and flexible manner.'"). "'[T]he core question is whether the agency has completed its decision[-]making process, and whether the result of that process is one that will directly affect the parties.'" *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).

      1.    *Consummation*

        To mark the consummation of an agency's decision-making process, an agency action "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178. Rather, it must be the agency's "last word on the matter." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). "[A]n agency's determination of its jurisdiction is the consummation of agency decision[-]making regarding that issue." *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1091 (9th Cir. 2016).

        Defendants argue that the Corps' Section 408 determination is not a final agency action because NEXT must still obtain other permits before beginning construction. According to defendants, if and until NEXT receives all of these necessary permits, there can be no construction on the Proposed Refinery and thus no final agency action.

        In *Fairbanks North Star Borough v. U.S. Army Corps of Engineers*, the Ninth Circuit held that the Corps' jurisdictional determination that a tract of land contained "waters of the United States" under the Clean Water Act such that the landowner needed a permit from the Corps before developing the land marked the consummation of the agency's decision-making process. 543 F.3d 586, 589-90, 593 (9th Cir. 2008). The letter conveying the determination stated that the jurisdictional determination was valid for five years unless the agency received new information supporting a revision. *Id.* at 589-90. The court held that because the jurisdictional determination "announces the Corps' considered, definite and firm position about

the presence of jurisdictional wetlands on [the landowner's] property at the time it [was] rendered[,]" the first prong of the *Bennett* test was satisfied. *Id.* at 593.

Similarly, in *Navajo Nation*, the Ninth Circuit held that the defendant agency's legal determination that Native American Graves Protection and Repatriation Act ("NAGPRA") inventory requirements applied to certain remains and objects marked the consummation of the agency's decision-making process as to that issue. 819 F.3d at 1092. Through an in-person meeting and a letter communicating the decision, the agency had "made clear that no additional decision[-]making would be forthcoming" regarding NAGPRA's applicability. *Id.* at 1091-92. The court concluded that although the agency was still in the process of inventorying the artifacts, the agency's decision to follow its counsel's guidance that the inventory requirements applied and continue inventorying the artifacts consummated the agency's decision-making process as to the applicability of NAGPRA. *Id.* at 1092.

Here, the Corps' Section 408 determination marks the consummation of its decision-making process regarding the applicability of Section 408 to NEXT's proposal. Defendants' argument to the contrary misidentifies the agency action that plaintiffs contest. Plaintiffs do not—and at this time, cannot—contest the still-pending Section 404 permit; rather, plaintiffs challenge the Corps' determination that the Proposed Refinery need not go through Section 408 review because Section 408 did not apply. Like in *Navajo Nation*, the Corps' determination is a decision as to the applicability of Section 408, a statute that the Corps is charged with implementing. *See* 819 F.3d at 1092. The Corps states that it made that determination after "a review and evaluation which included subject matter experts in navigation, levee safety, and real estate[.]" Defs. Mot. 4 (citation omitted); *see also* EC 1165-2-220, *supra*, at 8 ("Section 408 decision-makers must also ensure the appropriate and requisite expertise has reviewed each Section 408 request."). Just as in *Fairbanks*, the Letter "announces the Corps' considered, definite, and firm position" on the issue of whether Section 408 applies to the Proposed Refinery. *See* 543 F.3d at 593; *see also Prutehi Litekyan*, 128 F.4th at 1109 (citation modified) (finding an agency action to be final where the agency "engaged in an evaluative process" and "arrived at a reasoned, deliberate decision"). The fact that the Corps reserves the right to "revoke" its decision if circumstances change "does not suffice to make an

otherwise final agency action nonfinal." *Prutehi Litekyan*, 128 F.4th at 1109 (internal quotation marks and citation omitted); *see Hawkes Co.*, 578 U.S. at 598 (internal quotation marks and citations omitted) (noting that the possibility of revising a decision based on "new information" "does not make an otherwise definitive decision nonfinal").

Moreover, the Corps has made clear that there is no further decision-making on the issue of Section 408.[1]  In May 2022, the Corps published in the Federal Register a notice of intent to prepare an EIS in connection with NEXT's Section 404 permit application.  87 Fed. Reg. 27991 (May 10, 2022).  The Corps deliberately excluded "any 408-review language" from the notice because it had already made a Section 408 determination.  Compl. ¶ 56 (internal quotation marks omitted).  That same day, the Corps responded to an email from BDIC and stated that the "Section 408 team ha[d] reviewed the NEXT proposal . . . and determine[d] the project as-proposed will not affect the [L]evee and require permission from the Corps under Section 408." *Id.* ¶ 57.  The Corps' treatment of its Section 408 determination thus also indicates that it will not engage in further decision-making on the issue.  Accordingly, the Corps' Section 408 determination marks the consummation of its decision-making process regarding Section 408.

2.    *Legal Effect*

*Bennett* "provide[s] several avenues for meeting the second finality requirement." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 986 (9th Cir. 2006).  An agency action has legal consequences if it "alters an agency's legal regime" or has a "'direct and immediate [] effect on the day-to-day business' of the subject party," or if the agency expects immediate compliance with its terms. *Id.* at 987 (quoting *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990)).

Defendants argue that the Letter only clarifies the limited issue of whether Section 408 permission is required and does not impose any obligations or consequences because it does not authorize or preclude any construction or further action by NEXT.

In *Fairbanks*, the Ninth Circuit held that the Corps' jurisdictional determination was not an

---

[1] During oral argument, defendants' counsel confirmed that the Corps would not make any further decisions regarding Section 408.

action by which rights or obligations have been determined or from which legal consequences would flow, even though the determination could prevent the plaintiff from asserting a "good faith defense" in a future proceeding. 543 F.3d at 593, 595. The court reasoned that the plaintiff's "rights and obligations remain[ed] unchanged" by the jurisdictional determination and "d[id] not itself command [the plaintiff] to do or forbear from anything." *Id.* at 593. The court noted that "as a bare statement of the agency's opinion, [the jurisdictional determination] c[ould] neither be the subject of 'immediate compliance' nor of defiance." *Id.* at 593-94 (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-40 (1980)). The court stated that "[a]t bottom, [the plaintiff] ha[d] an obligation to comply with the [Clean Water Act ('CWA')]" and that "[the plaintiff's] legal obligations arise directly and solely from the CWA, and not from the Corps' issuance of an approved jurisdiction determination." *Id.* at 594 (citing *Gallo Cattle Co. v. USDA*, 159 F.3d 1194, 1199 (9th Cir. 1998)). The court explained that "[w]hether [the plaintiff's] property is a jurisdictional wetland . . . depends on its 'vegetation, soil and hydrology'—the land is what and where it is" and that the Corps' jurisdictional determination "does not alter that physical reality or the legal standards used to assess that reality[.]" *Id.* (citation omitted). Therefore, were the plaintiff to proceed without regard to the Corps' assertion of jurisdiction, any greater risk of increased fines was not a legal consequence of the jurisdictional determination, but instead a "practical effect of [the plaintiff] having been placed on notice that construction might require a Section 404 permit." *Id.* at 595 (emphasis and citation omitted).

However, in *Hawkes Co.*, the Supreme Court held that both negative and affirmative jurisdictional determinations could have "direct and appreciable legal consequences" that satisfied the second prong of *Bennett*. 578 U.S. at 598. The Court held that a jurisdictional determination regarding whether a property contained jurisdictional waters bound "the two agencies authorized to bring civil enforcement proceedings under the [CWA], creating a five-year safe harbor from such proceedings for a property owner." *Id.* The Court also noted that "although the property owner may still face a citizen suit under the [CWA], such a suit—unlike actions brought by the Government—cannot impose civil liability for wholly past violations." *Id.* at 598-99 (citations omitted).

Moreover, in *Pacific Coast Federation of Fishermen's Association v. National Marine*

*Fisheries Service*, the Ninth Circuit concluded that the defendant agency's "no jeopardy" opinion "grant[ed] immunity to the proposed actions of other agencies required to obtain an [] opinion [from the defendant] before proceeding with their own actions[.]" 265 F.3d 1028, 1034 (9th Cir. 2001). Therefore, the court held that the opinion met the second prong of the *Bennett* test because it "'alter[ed] the legal regime' and ha[d] direct and appreciable legal consequences." *Id.*

Likewise, in *Cascadia Wildlands Project v. U.S. Fish and Wildlife Service*, another court in this district held the defendant agency's "no jeopardy" opinion issued to another agency satisfied the second *Bennett* prong for two reasons. 219 F. Supp. 2d 1142, 1148 (D. Or. 2002). First, if a taking occurred, the opinion "carrie[d] with it the assurance of immunity[,]" and the absence of such opinion "raise[d] the potential of liability[.]" *Id.* Second, the other agency's ability to use its "no jeopardy" conclusion in defense of its actions in a future proceeding was "an appreciable legal consequence." *Id.*

Here, legal consequences flow from the Corps' Section 408 determination. By determining that Section 408 does not apply to the Proposed Refinery, the Corps has, in essence, made a "no alteration" determination. Otherwise, a violation of Section 408 would be a misdemeanor and "shall be punished by a fine of up to $25,000 per day[.]" 33 U.S.C. § 411. It is true that the Corps' Section 408 determination does not authorize or prohibit construction of the Proposed Refinery, and NEXT still ultimately has an obligation to comply with Section 408, regardless of the Corps' determination. *See Fairbanks*, 543 F.3d at 594. However, as a practical matter, by determining that Section 408 does not apply to the Proposed Refinery, the Corps has stated that NEXT can use the Road as a haul road without needing the Corps' permission pursuant to Section 408. After making such determination, it is reasonable to assume that the Corps would not then request criminal prosecution of NEXT for using the Road as a haul road. *See* 33 U.S.C. § 413 ("The [United States] Department of Justice shall conduct the legal proceedings necessary to enforce the provisions of [Section 408] . . . [and shall] vigorously prosecute all offenders against the same whenever requested to do so by the Secretary of the Army."). Thus, like in *Cascadia Wildlands Project*, the Corps' Section 408 determination "carries with it the assurance of immunity" and could release NEXT from criminal liability in a future proceeding. 219 F. Supp. 2d at 1148; *see also Hawkes Co.*, 578 U.S. at 599.

The Corps' Section 408 determination also allows the Section 404 permit process to proceed, which "surely impacts legal rights[.]" *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, No. CV 16-8418 PSG (FFMx), 2017 WL 10607254, at *7 (C.D. Cal. July 14, 2017). The Court finds that these are all appreciable legal consequences.

Accordingly, the Corps' Section 408 determination constitutes a final agency action subject to judicial review.

**C.     Ripeness**

Finally, defendants raise concerns of prudential ripeness, which are discretionary. *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 870 (9th Cir. 2022) (citing *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000)). Defendants' arguments regarding ripeness also echo their arguments regarding final agency action, previously discussed in Section B.

"The doctrines of standing and ripeness are closely related, in that the application of either is intended to prevent courts from becoming enmeshed in abstract questions which have not concretely affected the parties." *Pac. Legal Found.*, 659 F.2d at 915 (internal quotation marks and citation omitted). To evaluate prudential ripeness, a court considers "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Taking these factors into consideration, the Court finds that plaintiffs' claim is ripe for review. First, delayed review could cause hardship to plaintiffs. Although NEXT has not yet begun construction, the Corps is currently conducting its Section 404 review of the Proposed Refinery and anticipates completing the draft EIS in November 2025. The Corps is supposed to carry out its Section 408 and Section 404 reviews concurrently, to the maximum extent practicable, and at this time, the Corps is not doing so.

Second, reviewing plaintiffs' claim at this point would not "inappropriately interfere with further administrative action[.]" *Id.* "[J]udicial review does not interfere with further administrative action

22

when the agency's decision is at 'an administrative resting place.'" *Env't Def. Ctr.*, 36 F.4th at 870 (quoting *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 977 (9th Cir. 2003)).  As detailed above, the Corps' Section 408 determination is final and demonstrates that its decision-making as to Section 408 is at an administrative resting place.  Any further decisions that the Corps may make with respect to NEXT's Section 404 permit will not help resolve the issues regarding Section 408 review.

Third, there is no need for additional factual development because the Corps has made its final determination regarding the applicability of Section 408.  Accordingly, plaintiffs' claim is prudentially ripe.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss, ECF [13], is DENIED.

IT IS SO ORDERED.

DATED this 7th day of August, 2025.

Adrienne Nelson
United States District Judge